UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| LYLE DOTSON, ET AL. | * | CIVIL ACTION NO. 16-15371 |
|---|---|---|
| | * | |
| | * | SECTION: "E"(1) |
| VERSUS | * | |
| | * | JUDGE SUSIE MORGAN |
| MICHAEL EDMONSON, ET AL. | * | |
| | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

Before the Court is the Supplemental Motion to Compel filed by the Plaintiffs (Rec. Doc. 29). For the following reasons, the Motion to Compel is DENIED in part and DENIED as MOOT in part.

Background

This lawsuit arises out of the purportedly wrongful arrest of plaintiff Lyle Dotson by certain Louisiana State Police ("LSP") officers in the French Quarter in New Orleans on October 7, 2015. Plaintiffs assert that LSP officers were patrolling the French Quarter pursuant to a contract with the City of New Orleans. At the time, Lyle was eighteen years old and alleges that he was visiting New Orleans with his father, plaintiff Olon Dotson, a professor of architecture at Ball State University and a group of Professor Dotson's architecture students. The group was touring the French Quarter and sometime after 8:00 p.m., they arrived at the St. Peter's Street entrance of Pat O Brien's where they planned to walk through the courtyard and building. Lyle was not permitted to enter the bar because he was under-aged. Apparently his group arranged for him to meet them at the back entrance of Pat O'Brien's on Bourbon Street after they walked through. According the

1

Complaint, Lyle became lost and ended up at the intersection of Bourbon Street and Toulouse Street.

Professor Dotson called Lyle on his cell phone when the group discovered Lyle was not at the Bourbon Street entrance of Pat O'Brien's after the walk-through. According to the Plaintiffs, while they were talking, three LSP troopers, defendants Huey McCartney, Calvin Anderson, and Tagee Journee, "came upon Lyle very aggressively, without warning, and without announcing themselves." Lyle alleges that McCartney demanded to know who he had been speaking with and Anderson and Journee restricted his movement. Lyle alleges that the officers refused to identify themselves, pushed him against a building and searched him three or four times. Lyle alleges that the officers told him that a fourth officer, Rene Bodet, had been working undercover in the French Quarter, and had been following someone and that Lyle had been "pointed out" as the individual that had been following Bodet "for an extended period of time." Plaintiffs submit that Bodet directed McCartney, Anderson, and Journee to Lyle based on his race. They insist that the only similarities between the person Bodet had been following and Lyle was that they were both wearing red bottoms (Lyle in pants and the other individual in shorts), black shirts (with different colored logos), and that they were African-American men.

Plaintiffs allege that Lyle explained to McCartney, Anderson, and Journee that he could not have been the individual followed by Bodet because he just arrived in the French Quarter. They allege that McCartney used his personal cell phone to take pictures of Lyle. Plaintiffs believe they did so to send the photography to Bodet. Apparently Lyle resisted having his photo taken, and plaintiffs allege that Lyle raised his knee to block his face from the camera and the officers told him that they would say he kicked them if he did not allow the photo to be taken. The officers arrested Lyle and took him to jail. Lyle was released from jail at 1:38 a.m. on October 9, 2017,

after Professor Dotson posted bond. Lyle's name appeared on a news website suggesting he had been arrested for drug activity, and Plaintiffs allege this posting still appears if Lyle's name is searched on the Internet. Lyle alleges that he abandoned an application to Tuskegee University because he felt such discomfort in answering questions about prior arrests and convictions. Eventually, after incurring "substantial lawyer's fees," the charges against Lyle were dismissed and expunged from his record.

Lyle and Professor Dotson filed this lawsuit on October 7, 2016, against officers McCartney, Anderson, Journee, Bodet, alleging that these officers violated Lyle's constitutional rights when they stopped, detained, and arrested him. Plaintiffs assert that defendants McCartney, Anderson, Journee, and Bodet were under Archote's direct command, and that Edmonson served as Superintendent of the LSP during the relevant period. Plaintiffs also sued Edmonson and Archote, alleging that they failed to supervise their subordinates McCartney, Anderson, Journee, and Bodet to ensure that they did not violate individuals' constitutional rights. Plaintiffs also allege that Edmonson and Archote are responsible for establishing and maintaining policies, customs, usages, practices, and procedures that they knew would deprives members of the public, including Lyle, of their constitutional rights. Plaintiffs also raise tort claims against all defendants.

Discovery

On August 21, 2017, the Plaintiffs filed their first motion to compel. They sought documents related to six categories of information: 1. LSP Policies and Procedures; 2. Invoices between LSP and the City of New Orleans; 3. Agendas, Minutes, and Notes; 4. Disciplinary Actions Related to Archote and Edmonson; 5. Training and Employment documents; and 6. Communications Data. Oral argument was held on September 5, 2017, at which time it was

determined that most of the requested documents belong to the LSP and that at least some of them were inaccessible to the defendants. The Court ordered that:

> Defendants will produce the PowerPoint presentation in response to Requests for Production 6 and 7 by close of business September 5, 2017. Defendants will notify Plaintiffs' counsel by September 8, 2017, (1) whether any of the individual Defendants have in their possession the Louisiana State Police policies and procedures sought by the Plaintiffs and (2) whether Defendants Archote and Edmonson can request and obtain their own personnel files from the Louisiana State Police. Defendants will, by September 12, 2017, (1) provide a response to Interrogatory 9 and (2) produce documents responsive to Request for Production 15 from the Defendants' personal cellular telephones.

(Rec. Doc. 23). Following the oral argument, Plaintiffs served LSP with a subpoena for documents. Additionally, Defendants' counsel informed the Plaintiffs that the Defendants who are still employed by LSP can access LSP policies and procedures via password protected LSP intranet. They appeared to take the position, however, that they could not produce the policies and procedures to the Plaintiffs because they only have access as employees of the LSP and do not have the authority to disclose the policies and procedures. Defendants also represented that there is no policy by which Archote and Edmonson can request their own personnel files.

Plaintiffs renewed their motion to compel arguing that the Defendants have sufficient level of control and access to the LSP policies and procedures that they can, and should, be compelled to produce them. Plaintiffs cite cases holding that a party can be compelled to produce a third party's documents if he has access to the documents, even if he does not have authority to do so. Further, they argue that Defendants' response regarding whether Edmonson and Archote can obtain their personnel files is inadequate because the issue is not whether there is a policy that would allow them to obtain their personnel files, but instead, whether they can actually request and obtain them. They point out that the vast majority of the personnel files would be available to the members of the public through a Freedom of Information Act request.

4

This Court held a telephone conference with the parties on September 18, 2017, regarding the renewed Motion to Compel and Plaintiffs' request to expedite the Motion. At that time, Plaintiffs reported that the LSP had provided a written response to the subpoena for documents, but had not yet produced any documents. The LSP's written responses seemed to indicate that the requested personnel documents for Archote and Edmonson would be produced. With regards to the policies and procedures, the LSP agreed to produce a subset based on its determination of which policies and procedures are relevant. The LSP also appeared to make vague objections on the basis of confidentiality. At the time of the telephone conference, no policies had yet been produced.

Defendants oppose the Motion. With regards to the Archote and Edmonson personnel files, they submit that the Motion is moot because the LSP has agreed to produce the requested personnel documents. They add that if the LSP fails to produce the documents, they will take whatever action they are entitled to take in order to obtain the requested personnel documents. They point out that the request to the LSP was narrowed from the original request for the entire personnel file to instead request specific items from the personnel files. They submit that to the extent the Plaintiffs have broadened their request to again seek the entire personnel file, they renew their previous objections on the ground of relevance.

Law and Analysis

*a. Discovery Standard*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). In determining proportionality, the parties (and the Court if called to weigh in) should consider:

the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

A party may move for an order compelling a discovery response when another party fails to produce documents requested under Rule 34 or fails to answer an interrogatory under Rule 33. Fed. R. Civ. Proc. 37(a)(3)(B). The Rules instruct that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Id. 37(a)(4).

### b. *Compelling a Government Employee to Produce the Government's Documents*

It appears there is no binding precedent in the United States Court of Appeals for the Fifth Circuit regarding whether an employee who is a party to litigation can be compelled to produce his non-party employer's documents if he has the ability to access them, but not the authority to disclose them. See Lifesize, Inc. v. Chimene, No. A-16-CV-1109-RP-ML, 2017 WL 2999426, at *2 (W.D. Tex. June 2, 2017) ("[T]he court does not need to reach the interesting legal issue—for which there does not appear to be clear Fifth Circuit authority—of whether a non-party competitor's confidential and sensitive documents can be obtained through discovery from a party who is merely an employee of that competitor.").

Plaintiffs rely on several cases from the Eastern District of Louisiana where a party has been compelled to produce documents that belong to or are in the possession of a non-party. The best case for the Plaintiffs' position here is Benson v. Rosenthal, where Mr. Benson argued that he could not be compelled to produce certain documents in his possession because those documents belonged to the National Football League ("NFL") and the National Basketball Association

6

("NBA") and those organizations had not consented to disclose them. No. CV 15-782, 2016 WL 1046126, at *4 (E.D. La. Mar. 16, 2016). Magistrate Judge Wilkinson rejected this argument, holding that if the plaintiff has the "legal right or practical ability" to obtain the documents, then "they are within his control and he must produce them." Id. Plaintiffs also cite Commerce & Industry Insurance Co. v. Grinnell Corp., for the proposition that "once a document (or other tangible thing) has been delivered to a party, it is reasonable to presume that the document is in that party's possession, custody or control." No. 97-0775, 2001 WL 96377, at *3 (E.D. La. Feb. 1, 2001). In Commerce, Magistrate Judge Roby compelled the third-party defendant to produce a claims file that belonged to a non-party, but which had been obtained by the third-party defendant and was in the possession of its counsel. Id.

Plaintiffs cite Monroe's Estate v. Bottle Rock Power Corp., for the proposition that "Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty." No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004). There, Magistrate Judge Knowles held that the parties could be compelled to produce documents in the possession of their wives, who were not parties, because there was evidence that the parties exercised sufficient control or sway over their wives' business interests that they could be deemed able to obtain the documents. Id. Similarly, in First American Bankcard, Inc. v. Smart Business Technology, Inc., Magistrate Judge Wilkinson held that the defendant company could be compelled to produce certain documents that it argued it could not produce because it was no longer a going concern and the documents were in the hands of its former owners. No. CV 15-638, 2017 WL 2267149, at *3 (E.D. La. May 24, 2017). Judge Wilkinson explained that "[a]s 'former owners and top officers' of defendant, Fuente and Romero are precisely the kinds of individuals who owe an obligation to their ex-corporate employer to provide the requested materials upon

7

request and from whom the corporate defendant would be expected to have a practical ability to obtain them." Id. It should be noted that in First American, the former officers were also defendants in the lawsuit and had been served with the same document requests. Magistrate Judge Wilkinson ordered the parties to confer and coordinate production. Additionally, both First American and Monroe involved documents that were in the possession of someone other than the party responding to discovery, but the individual in possession of the documents was considered to be, in some way, controlled by or obligated to the party subject to the discovery request. These facts are dissimilar to the present matter where the documents belong to a non-party employer and there is no argument made that the defendant employees have control over the non-party employer.

Moreover, as the Defendants point out, all the cases cited by the Plaintiffs can be distinguished because not one involves the attempt to access documents belonging to an employer through discovery served on an employee.[1] Defendants cite Solis v. Bruister, where the district court held the defendant's "attempt to obtain a copy of a [government document] from [a non-party government employee] personally at her deposition was improper." No. 4:10-CV-77-DPJ-FKB, 2012 WL 12829683, at *9 (S.D. Miss. Dec. 26, 2012). The court required that the request "be made by a properly propounded discovery request to [the plaintiff, Secretary of the United States Department of Labor]." Id. Defendants also cite a case involving a grand jury subpoena issued to the records custodian and an employee of a sole proprietorship that was under investigation for violations of federal securities laws. In re Grand Jury Subpoena, 646 F.2d 963, 969 (5th Cir. 1981). The Fifth Circuit held that certain "non-required" records were protected by the Fifth Amendment privilege of the sole proprietor of the company. Id. As to the subpoena to

---

[1] Plaintiffs point out that First American involves an employment relationship. But there, the employer was the party to the lawsuit, and it no longer had physical custody of the documents because it no longer existed as an entity and the documents had been retained in the hands of former owners which, Magistrate Wilkinson found, were still effectively controlled by the employer.

8

the employee, the Fifth Circuit concluded that "although [the sole proprietor] hired employees to assist in the operation of his business, he never relinquished control of the records to any employee." Id. Thus, the court of appeals held that the fact that the employee "had access to the records is irrelevant, for mere access is not possession, custody, or control." Id. The court of appeals concluded that the subpoena to the employee "if upheld, would be illegal because it would direct her to produce documents not in her possession, custody, or control. Because [the employee] had mere access, her compliance with the subpoena would have required that she illegally take exclusive possession of [the sole proprietor's] documents and deliver them to the grand jury." Id. Similarly, in U.S. ex rel. Touhy v. Ragen, the United States Supreme Court held that an FBI agent properly refused to submit certain Department of Justice documents in response to a subpoena where he was "prohibited from making such submission by his superior through [an official Department of Justice Order]." 340 U.S. 462, 467 (1951). In so holding, the Supreme Court found that the underlying Department of Justice Order was valid. Id. at 468. Finally, Defendants also rely on a case from outside of this circuit where a district court held that an employee of the government agency defendant could not be compelled to produce the government agency's documents, explaining that "[a]s a government employee . . . [the director]'s 'control' of documents created in the ordinary course of the government's business is secondary to that of his employer; he cannot on his own initiative remove government files and provide them to a third party." Lowe v. Dist. of Columbia, 250 F.R.D. 36, 38-39 (D.D.C. 2008).

In both In re Grand Jury Subpoena and U.S. ex rel. Touhy v. Ragen, the courts found that the employer had a right to withhold the documents and that the employee could not be compelled to produce the documents as a way around that right. Here, the Court has not yet made a

9

determination of whether the LSP's refusal to produce so many of the requested policies is appropriate. The Court's ability to do so at this juncture, without briefing by the LSP, is limited.

The Court finds the Fifth Circuit's instruction that "mere access is not possession, custody, or control" to be an important concept here. In re Grand Jury Subpoena, 646 F.2d at 969. Although the defendants can log onto their employer's website to obtain the documents, this does not necessarily mean that the documents are in their possession, custody, or control. This sentiment also appears to be the basis for the district court's decision in Lowe finding that documents created by the employee in his role as employee are not his documents to produce as an individual. 250 F.R.D. at 38-39. The interpretation proposed by the Plaintiffs could be far reaching. Not only do Plaintiffs insist that a government employee who is party to a lawsuit can be compelled to turn over government documents to which he has access in the course of his employment over the government's objection, but their interpretation would seem to extend to commercial employers as well. For example, imagine a case involving the alleged breach of a non-compete or non-disclosure agreement by a former employee. The former employer could sue the employee and use discovery served on the employee to access the competitor's trade secrets over the competitor's objection. See Am. Maplan Corp. v. Heilmayr, 203 F.R.D. 499, 502 (D. Kan. 2001). This happened in American Maplan, where the District of Kansas held that the former employee defendant could not be compelled to produce documents regardless of his "practical ability" to obtain them. Id. The court explained that the appropriate device to obtain the documents was a subpoena to the new company, which would allow the non-party company to challenge discovery in its home forum, rather than having to intervene in the underlying litigation. Id.

Like in American Maplan and Lowe, the defendants have access to the sought after policies and procedures in their role as employees for the purposes of their employment. The Court cannot

automatically equate this access with possession, custody or control. The Benson case must be distinguished. There, Mr. Benson had actual possession of the NFL and NBA documents. It does not appear Mr. Benson put forth any legal basis, such as a confidentiality agreement, for requiring consent of the NFL or NBA to release the documents. It is unclear why Mr. Benson would have possession of the documents without the ability to use them. See Commerce, 2001 WL 96377, at *3 (explaining that "once a document (or other tangible thing) has been delivered to a party, it is reasonable to presume that the document is in that party's possession, custody or control"). In contrast, in the case of an employee who has access to his employer's documents for the purpose of completing his work for the employer, it is not reasonable to presume that such access means the employee has the legal right to personally possess those documents outside of his employment. Here, as in American Maplan, the better course of action is for the Plaintiffs to obtain the requested documents from the LSP by subpoena and for the Court to consider the objections of the LSP in that procedural posture. Importantly, this is not a case where the LSP claims to be beyond the subpoena power of the Court.[2]

Plaintiffs attempt to distinguish the cases cited by the Defendants by focusing on the preference for obtaining discovery directly from parties rather than through non-parties by subpoena. But their concern that the LSP cannot be "reached for discovery purposes" is unfounded. While the LSP cannot be subject to suit, they are subject to a subpoena. Although the Court is concerned that the Defendants delayed months before clearly expressing lack of possession of the documents as a basis for objection to Plaintiffs' requests, the Court nonetheless finds that given

---

[2] Plaintiffs urge this Court to avoid the "fox-hunting theory of justice" that Justice Frankfurter warned against in his concurrence in Touhy. 340 U.S. at 473 (Frankfurter, J., concurring). Justice Frankfurter worried about a situation where the Attorney General was held empowered to forbid his employees from producing documents, but then could later claim that he was outside the reach of legal process and could not himself be compelled to produce the documents either.

the interest of an employer in protecting its documents, this failure on the part of the Defendants will not operate as a waiver of the LSP's rights to appear directly to attempt to protect its documents from discovery. Furthermore, it must be noted that Plaintiffs could have sped up the process significantly and streamlined the legal issues inherent in requesting the employee defendants to obtain and produce various documents belonging to their employer through the issuance of a subpoena to LSP months ago.

Accordingly, as to the Motion to Compel the defendants to produce LSP's policies and procedures, the Motion is denied.

   *c. Archote and Edmonson Documents*

The Court ordered the Defendants to inform the Plaintiffs "whether Defendants Archote and Edmonson can request and obtain their own personnel files from the Louisiana State Police." Defendants' counsel responded that "[t]he Department of Public Safety does not have a policy which allows its employees to inspect their HR personnel file." This response seems to avoid the question of whether Archote and Edmonson have the practical ability to request and obtain their personnel files regardless of the existence of an official policy. Nonetheless, in a telephone conference held by the Court with the parties and an attorney for the LSP on September 26, 2017, it was represented that in response to the subpoena, LSP has produced documents responsive to the following, narrowed request related to the Archote and Edmonson personnel files:

> Any and all investigations, disciplinary actions, and/or appeals to the State Police Commission pertaining to Col. Michael Edmonson and Captain Donovan Archote, including but not limited to a. Any allegations against any of the above named individuals regarding inappropriate or excessive use of force; b. Any allegations of racial profiling, c. Any other alleged misconduct, d. any commendations or promotions.

Thus, as to the production of the Archote and Edmonson personnel files, the Motion to Compel is moot. To the extent Plaintiffs determine that the LSP's response to the subpoena is deficient, this

presents a new issue that can be raised before the Court by the appropriate motion with regards to the subpoena.

## Conclusion

For the foregoing reasons, the Motion to Compel Defendants to produce the LSP Policies and Procedures is DENIED and the Motion to Compel Archote and Edmonson to produce their personnel files is DENIED as MOOT.

New Orleans, Louisiana, this 28th day of September, 2017.

_____
Janis van Meerveld
United States Magistrate Judge