UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| LYLE DOTSON, ET AL., | CIVIL ACTION |
| Plaintiffs | |
| VERSUS | NO. 16-15371 |
| COL. MICHAEL EDMONSON, ET AL., | SECTION: "E" (1) |
| Defendants | |

## ORDER AND REASONS

Before the Court is Defendants' motion for partial summary judgment.[1] Defendants assert there are no disputes of material fact regarding the claims of Plaintiff Olon Dotson, and they are entitled to judgment as a matter of law.[2] Plaintiffs oppose the motion.[3] Defendants filed a reply.[4] For the reasons that follow, the motion is **GRANTED**.

## BACKGROUND

The allegations in the complaint are as follows. On October 7, 2015, Professor Olon Dotson, his son Lyle, and several of Professor Dotson's architecture students stopped in New Orleans during an architecture tour through the South.[5] When they reached New Orleans, Professor Dotson dropped his students off in the French Quarter while he went to check into their hotel.[6] After a brief visit at Café du Monde, a popular café and tourist attraction in the French Quarter, the group of students walked to Pat O'Brien's, where they intended to view the architecture of the interior courtyard.[7] Because Lyle was

---

[1] R. Doc. 67.
[2] R. Doc. 67-1 at 2.
[3] R. Doc. 84; R. Doc. 107. The Plaintiffs' Statement of Contested Facts references R. Doc. 67-2. The correct citation is to R. Doc. 78, as the Defendants filed an amended Statement of Uncontested Facts pursuant to the Court's November 14, 2017 Order. R. Doc. 69. The Amended Statement of Uncontested Facts supplied additional citations to the record.
[4] R. Doc. 93.
[5] R. Doc. 1 at 5.
[6] *Id.* at 5-6.
[7] *Id.* at 6.

1

eighteen years old at the time, he was not allowed into Pat O'Brien's. They made a plan for Lyle to meet up with the students when the group exited through the other side of the bar.[8] Lyle got lost while making his way there.[9] He ultimately ended up near the intersection of Bourbon Street and Toulouse Streets.[10] When the group emerged from Pat O'Brien's and did not immediately find Lyle, they called his father, who then called Lyle.

According to deposition testimony provided by the Defendants in connection with a separate motion for summary judgment on the claims of Lyle Dotson,[11] around the same time the tour group left Café du Monde, undercover Louisiana State Police officers conducted a drug buy operation in the vicinity of St. Louis Cathedral in the French Quarter.[12] Defendant Rene Bodet, a Louisiana State Trooper, was a member of a "cover" team, assigned to watch the undercover troopers posing as drug buyers.[13] After the buy, while walking through the streets of the French Quarter, the cover team reported a potential "shadow"—a person following the undercover troopers to determine whether they were police officers. The potential "shadow" would later be identified as Lyle Dotson.[14] Trooper Bodet then sought the assistance of several uniformed Louisiana State Police troopers—Defendants Huey McCartney, Calvin Anderson, and Tagee Journee—to stop Lyle in order to positively identify him and determine whether he was in fact following the officers.[15]

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] R. Doc. 75. The deposition testimony provided by the Defendants includes facts not covered in the statement of material facts associated with the present motion for summary judgment. Some facts may be in dispute, but they are not material to this motion and are included only as background information.
[12] *Id.*
[13] R. Doc. 94-12, Deposition of Rene Bodet, at 126.
[14] *Id.* at 135.
[15] R. Doc. 84-9, Deposition of Huey McCartney at 123.

2

Plaintiffs allege Lyle Dotson was approached by Troopers McCartney, Journee, and Anderson while Lyle was speaking to his father on his cell phone[16] and was then placed in handcuffs.[17] Plaintiffs further allege Trooper McCartney took possession of Lyle's phone and disconnected the call with Lyle's father.[18] After a brief detention, Plaintiffs allege the troopers then walked Lyle Dotson two blocks to the New Orleans Police Department Eighth District Station.[19]

The parties do not dispute that when the troopers initially encountered Lyle, Professor Dotson heard his son say "whoa" over the phone, and then the call was disconnected.[20] It is also undisputed that Professor Dotson attempted to call his son back, but received no answer.[21] The parties agree that Professor Dotson arrived at the station after Lyle.[22] Professor Dotson was not at the scene of Lyle's arrest and did not see or speak to his son until after Lyle arrived at the Eighth District police station.[23]

Plaintiffs filed suit in this Court on October 7, 2016.[24] Lyle asserts causes of action under 42 U.S.C. § 1983, alleging violations of rights protected by the First, Fourth, Eighth, Ninth, and Fourteenth Amendments to the Constitution.[25] Lyle also asserts causes of action under Louisiana state law.[26] Professor Dotson raises two claims. First, he asserts a tort claim for intentional inflection of emotional distress under Louisiana Civil Code

---

[16] R. Doc. 1 at 6.
[17] R. Doc. 1 at 9.
[18] R. Doc. 1 at 7. *See also* R. Doc. 84-3, Deposition of Lyle Dotson at 31.
[19] *Id.* at 10-11.
[20] R. Doc. 78 at ¶ 4; R. Doc. 107 at ¶ 4.
[21] R. Doc. 78 at ¶ 5; R. Doc. 107 at ¶ 6; R. Doc. 84-1 at ¶5-6. Plaintiffs do dispute there was only one call and, instead, point to Professor Dotson's deposition testimony that he called three times. This dispute is not material to the Court's decision.
[22] R. Doc. 78 at ¶ 6; R. Doc. 84-1 at ¶ 8.
[23] R. Doc. 78 at ¶ 6-7; R. Doc. 107 at ¶ 6; R. Doc. 84-1 at ¶ 8.
[24] R. Doc. 1.
[25] *Id.* at 2.
[26] *Id.* at 27-28.

article 2315,[27] arguing that by repeatedly declining to answer Lyle's phone, Trooper McCartney's conduct "intentionally den[ied] a clearly worried 'Dad' access to information about his son's well-being."[28] Second, Professor Dotson asserts "bystander negligence" claims under Louisiana Civil Code article 2315.6[29] in relation to two distinct events.[30] He claims that he suffered emotional distress when he "aurally" witnessed the encounter between the troopers and his son and "believed his son had been injured or abducted for over an hour."[31] He also claims that he suffered emotional distress when he visually observed his son "chained to a bench" at the police station.[32]

Defendants now move for summary judgment that, based on the undisputed material facts, they are entitled to judgment on Professor Dotson's claims under articles 2315 and 2315.6.[33]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] "An issue is material if its resolution could affect the outcome of the action."[35] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[36] All reasonable inferences are drawn in favor of the nonmoving party.[37]

---

[27] LA. CIV. CODE ANN. art. 2315 (1999).
[28] R. Doc. 84 at 11.
[29] LA. CIV. CODE ANN. art. 2315.6 (1991).
[30] *Id.* at 27-28.
[31] R. Doc. 1 at 27.
[32] R. Doc. 84-2, Deposition of Olon Dotson at 31-32.
[33] R. Doc. 67.
[34] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[35] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[36] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[37] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

4

There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[38]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[39] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[40]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[41] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention

---

[38] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[39] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[40] *Celotex*, 477 U.S. at 322–24.
[41] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[42] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[43] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[44] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[45] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[46]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[42] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[43] *Celotex*, 477 U.S. at 332–33.
[44] *Id.*
[45] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[46] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

6

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[47]

## **ANALYSIS**

I. <u>Intentional Inflection of Emotional Distress</u>

Professor Dotson asserts a state-law claim for intentional inflection of emotional distress against Defendants McCartney, Anderson, Journee, and Bodet in their individual capacities.[48] The basis for the tort of intentional infliction of emotional distress under Louisiana law is Louisiana Civil Code article 2315.[49] To recover for intentional infliction of emotional distress, a plaintiff must establish three elements: "'(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'"[50]

Defendants present the following undisputed facts in support of their motion for summary judgment. First, Professor Dotson heard his son say "whoa," and then the call was disconnected.[51] Second, Professor Dotson attempted to call his son back, but received no answer.[52] Third, Professor Dotson was not at the scene of Lyle Dotson's arrest, and did not see or speak to his son until he visually witnessed Lyle on the bench in the Eighth

---

[47] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[48] R. Doc. 1 at 27.
[49] LA. CIV. CODE ANN. art. 2315 (1999). *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1021 (La. 2000); *Hamilton v. Powell*, No. 13-2702, 2014 WL 6871410, at *7 (W.D. La. Dec. 2, 2014).
[50] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1137 (5th Cir. 2014) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)).
[51] R. Doc. 78 at ¶ 4; R. Doc. 107 at ¶ 4.
[52] R. Doc. 78 at ¶ 5; R. Doc. 107 at ¶ 6; R. Doc. 84-1 at ¶5-6.

District Police Station.[53] Defendants assert these facts establish they are entitled to judgment as matter of law on Plaintiff's article 2315 claim because, even making all reasonable inferences in favor of Professor Dotson, the troopers' conduct was not extreme or outrageous.[54]

Plaintiffs have the burden of proof at trial that Defendants' conduct was extreme and outrageous. Defendants, as movants, argue there is no evidence in the record to establish this essential element of Plaintiffs' claim. The Plaintiffs may defeat summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[55] In their response in opposition, Plaintiffs submit the following facts. First, Professor Dotson called his son's phone three times with no answer after he heard Lyle says "whoa" and the call was disconnected.[56] Second, Trooper McCartney had possession of Lyle's phone for the majority of the stop and detention.[57] Third, Trooper McCartney had Lyle's phone in a place that was visible and allowed Defendant troopers to see if phone calls were made to Lyle's phone and who was calling.[58] Fourth, Professor Dotson's phone calls to his son's phone were observed by Trooper McCartney.[59] Fifth, Professor Dotson's phone calls to his son's phone never received a verbal answer by Trooper McCartney.[60] Sixth, Professor Dotson's phone calls to his son's phone were answered and then immediately disconnected by Trooper McCartney.[61]

---

[53] R. Doc. 78 at ¶ 6-7; R. Doc. 107 at ¶ 6; R. Doc. 84-1 at ¶ 8.
[54] *White*, 585 So. 2d at 1209 (discussing the outrageous quality of conduct necessary to create liability under art. 2315).
[55] *Celotex*, 477 U.S. at 332–33.
[56] R. Doc. 84-1 at ¶ 1; R. Doc. 107 at ¶ 5.
[57] R. Doc. 84-1 at ¶ 2.
[58] *Id.* at ¶ 3.
[59] *Id.* at ¶ 4.
[60] *Id.* at ¶ 5.
[61] *Id.* at ¶ 6.

Based on this evidence, Plaintiffs have failed to create a genuine dispute of material fact with respect to whether Defendants McCartney, Anderson, Journee, and Bodet engaged in extreme or outrageous conduct. Louisiana law sets a very high bar for establishing a claim under article 2315.[62] The defendant's conduct must be atrocious, outrageous, or utterly intolerable.[63] Indeed, the alleged conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[64] The defendant's actions must be intended or calculated to cause severe emotional distress; "some lesser degree of fright, humiliation, embarrassment, worry, or the like" is insufficient.[65] As the Fifth Circuit has explained, "Louisiana courts, like courts in other states, have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury."[66]

Plaintiffs argue that by purposely disconnecting the call each time Professor Dotson called during Lyle's detention, Trooper McCartney "intentionally den[ied] a clearly worried 'Dad' access to information about his son's well-being."[67] The Court finds, however, that Trooper McCartney's conduct regarding Professor Dotson's calls does not rise to the level of "truly outrageous conduct." Indeed, it seems eminently reasonable that a police officer conducting an investigatory stop would decline to answer a suspect's phone, even if he knew that the suspect's parents were calling. Conduct within the bounds

---

[62] *White*, 585 So. 2d at 1209 (defining requirements for liability under LA. CIV. CODE ANN. art. 2315).
[63] *Obee v. Xerox Corp.*, No. 99-470, 1999 WL 717637, at *2 (E.D. La. Sept. 14, 1999).
[64] *White*, 585 So. 2d at 1209.
[65] *White*, 585 So. 2d at 1210.
[66] *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 756–57 (5th Cir. 2001).
[67] R. Doc. 84 at 11.

of reasonableness cannot, as a matter of law, constitute "extreme and outrageous" behavior sufficient for an article 2315 claim.[68] Accordingly, Plaintiffs have not created a disputed issue of fact as to whether Defendants engaged in conduct that creates liability under article 2315.

Because a plaintiff has to prove all three elements of a claim for intentional infliction of emotional distress in order to recover under article 2315,[69] the lack of a material dispute as to whether Defendants' conduct was severe and outrageous entitles the Defendants to summary judgment on the claim.

II. <u>Bystander Negligence</u>

Professor Dotson asserts two bystander negligence claims under Louisiana Civil Code article 2315.6.[70] First, he claims he suffered emotional distress when he "aurally" witnessed the encounter between the troopers and his son and "believed his son had been injured or abducted for over an hour."[71] Second, he claims he suffered distress when he visually observed his son "chained to a bench" at the police station.[72]

Louisiana Civil Code article 2315.6 provides that persons "who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury."[73] There are four basic requirements to recover "bystander" damages, or damages for mental anguish or emotional distress suffered as a result of another person's injury. These requirements are: (1) the claimant must have a

---

[68] *Thomas v. Town of Jonesville*, 2013 WL 265235 *8 (W.D. La. 2013).
[69] *White*, 585 So. 2d at 1209.
[70] *Id.* at 27-28. LA. CIV. CODE ANN. art. 2315.6 (1991).
[71] R. Doc. 1 at 27.
[72] R. Doc. 84-2, Deposition of Olon Dotson at 31-32.
[73] LA. CIV. CODE art. 2315.6.

specifically enumerated relationship with the injured person; (2) the claimant must have viewed an event causing injury to the injured person or have come upon the scene of the event soon thereafter; (3) the harm to the injured person must have been severe enough that one could reasonably expect the observer to suffer serious mental distress; and (4) the claimant must suffer emotional distress that is severe, debilitating, and foreseeable.[74] Each of the four requirements is dispositive.[75]

### A. *Claim One: "Aurally" Witnessing the Initial Encounter*

Defendants present the following facts in support of their motion for summary judgment. First, at the time of the initial encounter, Professor Dotson heard his son say "whoa," and then the call was disconnected.[76] Second, Professor Dotson was not at the scene of Lyle's arrest and did not see or speak to his son until Professor Dotson arrived at the Eighth District police station.[77] Defendants argue that these facts entitle them to judgment as a matter of law on Professor Dotson's bystander negligence claim, because he did not "view" the events which allegedly caused injuries to his son, and there is no evidence in the record to establish this essential element.[78] Plaintiffs do not dispute the facts above, but instead argue there is a genuine dispute of material fact as to whether this "contemporaneous sensory perception" of his son's encounter with the troopers is tantamount to "viewing," entitling Professor Dotson to relief under article 2315.6.[79] Analyzing Plaintiffs' claim according to the requirements outlined above, the Court finds

---

[74] *Cooper v. Patra*, 51,182 (La. App. 2 Cir. 2/15/17), 215 So. 3d 889, 892, *writ denied*, 2017-0476 (La. 5/12/17), 219 So. 3d 1104.
[75] *Kipps v. Caillier*, 197 F.3d 765 (5th Cir. 1999) (discussing elements for liability under article 2315.6).
[76] R. Doc. 78 at ¶ 4.
[77] *Id.* at ¶ 5-7; R. Doc. 84-1 at ¶ 8.
[78] R. Doc. 67-1 at 6.
[79] R. Doc. 84 at 12. *See* LA. CIV. CODE ANN. art. 2315.6.

11

that Plaintiffs have not created a genuine issue of material fact sufficient to survive summary judgment.

Under article 2315.6, a claimant must "view an event causing injury to another person, or come upon the scene of the event soon thereafter."[80] Here, the undisputed facts show that Professor Dotson did not *view* an event. He alleges only that he *heard* the event. The statute specifically requires that the claimant "view" the event, and Plaintiffs point to no governing case law that suggests that hearing the event suffices under article 2315.6.[81]

Even if hearing an event were sufficient, however, the undisputed facts show that Professor Dotson did not hear or see his son sustain an injury. When the call was disconnected, he was not aware of any injury to his son. All he had heard was Lyle say "whoa." As the Supreme Court of Louisiana has stated, article 2315.6 "allow[s] recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and *apparent*, but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances."[82]

Accordingly, Plaintiffs fail to create a genuine dispute of material fact with respect to whether Professor Dotson viewed an injury. Because each of the four elements discussed above is required to prove liability under article 2315.6,[83] Defendants are entitled to summary judgment on Plaintiffs' claim for bystander negligence related to the initial encounter.

---

[80] LA. CIV. CODE ANN. art. 2315.6 (1991).
[81] Plaintiffs cite *Lejeune v. Rayne Branch Hospital*, 556 So. 2d 559, 570 n.11 (La. 1990) for the proposition that a claimant may assert a claim based on a "contemporaneous sensory perception of the accident," but Lejeune was decided before the enactment of article 2315.6, and so cannot govern the interpretation of the statute's terms.
[82] *Trahan v. McManus*, 97-1224 (La. 3/2/99), 728 So. 2d 1273, 1279–80 (emphasis added).
[83] *Kipps v. Caillier*, 197 F.3d 765 (5th Cir. 1999) (discussing elements for liability under article 2315.6).

B.  *Claim Two: Visually Observing Lyle at the Police Station*

Plaintiffs also assert a claim for bystander negligence on the grounds that Professor Dotson experienced emotional distress at the sight of Lyle in handcuffs at the police station. In support of their motion for summary judgment, Defendants state, and Plaintiffs do not dispute, that Professor Dotson first saw his son at the Eighth District police station well after Lyle had already been arrested.[84] Professor Dotson testified:

> I walked into the front door of the place, and there was a lot of activity. I remember the building was all white, and I remember it being bright in there. And I looked to my slight left and I saw like a table that looked like— not a table but an area that looked like where you [come to a desk], I guess. And I walked—proceeded to it; and then I approached [and] I saw Lyle sitting on a bench. . . . And he was staring at me in a way that I've never seen before. . . Like you know, here's my son chained to a bench.[85]

As noted above, the claimant must "view an event causing injury to another person, or come upon the scene of the event soon thereafter" in order to recover under article 2315.6.[86] Plaintiffs have failed to create a genuine issue of material fact with respect to whether Professor Dotson viewed an injury-causing event. It is undisputed that Lyle did not sustain any injuries at the police station. Rather, the Plaintiffs allege that Lyle was injured when, after arrest, the Defendants tightened his handcuffs and walked him to the police station.[87] Even assuming that this injury was "severe enough that one could reasonably expect the observer to suffer serious mental distress,"[88] Professor Dotson did not witness the injury occur.[89] The Louisiana Supreme Court has made clear that the

---

[84] R. Doc. 107 at ¶ 6-7.
[85] R. Doc. 84-3, Deposition of Olon Dotson, at 27.
[86] LA. CIV. CODE ANN. art. 2315.6 (1999).
[87] *See* R. Doc. 90-1, ¶¶ 48-49.
[88] *Cooper v. Patra*, 51,182 (La. App. 2 Cir. 2/15/17), 215 So. 3d 889, 892, *writ denied*, 2017-0476 (La. 5/12/17), 219 So. 3d 1104.
[89] *See Daigrepont v. Louisiana State Racing Com'n*, 95-0539 (La. Ct. App. 4 Cir. 10/26/95), 663 So.2d 840 (denying recovery under article 2315.6 when a father arrives upon the scene of an accident, is informed of the accident, rushes to the hospital where his son has been taken, and later views a video tape of the accident).

13

plaintiff must "actually view the event" causing the injury, or "come upon the accident scene soon after it has occurred and before any substantial change had taken place in the victim's condition."[90] Professor Dotson saw his son for the first time approximately 30 minutes after the alleged injuries had occurred, in a location blocks away from the scene of the alleged injuries. Consequently, there is no genuine issue of material fact as to whether Professor Dotson viewed the injury-causing event. Because each of the four elements is required to prove liability under article 2315.6,[91] Defendants are entitled to summary judgment on Plaintiffs' claim for bystander negligence related to the encounter at the police station.

## CONCLUSION

For the above reasons, the Defendants' motion for partial summary judgment with regard to Plaintiff Olon Dotson's claims is hereby **GRANTED**.

**New Orleans, Louisiana, this 4th day of December, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[90] *Veroline v. Priority One EMS*, 2009-1040 (La. 10/9/09), 18 So.3d 1273, 1276.
[91] *Kipps v. Caillier*, 197 F.3d 765 (5th Cir. 1999) (discussing elements for liability under LA. CIV. CODE ANN. article 2315.6).