UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LYLE DOTSON AND OLON DOTSON,<br>Plaintiffs,<br><br>v.<br><br>COL. MICHAEL EDMONSON,<br>TROOPER HUEY MCCARTNEY,<br>TROOPER CALVIN ANDERSON,<br>TROOPER TAGEE JOURNEE,<br>TROOPER RENE BODET, each in their<br>individual capacities.<br>Defendants. | * NUMBER: 16-cv-15371-SM-JVM<br>*<br>*<br>* SECTION: E<br>*<br>* JUDGE:<br>* SUSIE MORGAN<br>*<br>* MAGISTRATE:<br>* JANIS VAN MEERVELD<br>*<br>*<br>* |

**OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE EVIDENCE, TESTIMONY AND ARGUMENT**

Defendants have filed a Motion in Limine seeking to limit Plaintiff, Lyle Dotson's, presentation of evidence and testimony in three areas relevant to this case: (1) the disposition of the charge of Battery on an Officer against Lyle Dotson; (2) the Consent Decree governing the New Orleans Police Department; and (3) evidence related to other incidents involving the Louisiana State Police in the French Quarter and New Orleans.[1] For the reasons detailed below, these areas of evidence are relevant to Plaintiff's case and Defendants' Motion in Limine should be denied.

**I.    Legal Standard for Admissibility of Evidence**

Federal Rule of Evidence 402 provides as a base line that all "[r]elevant evidence is admissible" unless specifically prohibited by the United States Constitution, federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court.[2] The Federal Rules

---
[1] ECF No. 117.
[2] Fed. R. Evid. 402.

of Evidence prescribe that evident is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[3]

The base line admissibility of all relevant evidence is foundational to any reasonable system of evidence. It is true, that in order "to relax the iron rule of relevance"[4] in the interest of fairness, the court has discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[5] Defendants rely heavily on this Rule 403 exception of relevance. However, the exclusion of relevant evidence is an extraordinary remedy only to be used sparingly.[6] The court must balance the prejudice with the probativeness of the evidence,[7] and only if the unfair prejudice substantially outweighs the probative value of the evidence can the evidence be excluded.[8] In determining the weight courts should give to the probative force of evidence, appellate courts counsel that "the [district] court should generally 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."[9]

---

[3] Fed. R. Evid. 401.
[4] United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979).
[5] Fed. R. Evid. 403.
[6] United States v. Williams, CR 14-153, 2016 WL 6600144, at *2–3 (E.D. La. Nov. 8, 2016)(internal citations omitted).
[7] United States v. Pace, 10 F.3d 1106, 1115 (5th Cir. 1993).
[8] United States v. McRae, 593 Fd. at 707; see also United States v. Williams, CR 14-153, 2016 WL 6600144, at *2–3 (E.D. La. Nov. 8, 2016).
[9] S.E.C. v. Peters, 978 F.2d 1162, 1171 (10th Cir. 1992)(citing J. Weinstein & M. Burger, *Weinstein's Evidence* ¶ 403[03], at 403–25 to 403–26 (1982); see also World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir. 2006); E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc., 564 Fed.Appx. 710, 715 (4th Cir. 2014).

## II. Disposition of the Battery Charge in the Municipal Court

The Municipal Court Chronology Defendants seek to exclude on grounds of relevancy, prejudice, and hearsay is an essential component to proving elements of damages Plaintiff suffered in this case and does not pose any risk of undue prejudice to Defendants. Further, the Municipal Court Chronology falls squarely within the public records exception to the hearsay rule.

   a. <u>The Municipal Court Chronology and Evidence Relating to Municipal Court Charge is Relevant and Not Unduly Prejudicial to Defendants.</u>

Defendants appear to focus on only one line of the Municipal Court Chronology.[10] The document in fact presents a timeline of the Municipal Court proceedings against Lyle Dotson, including the amount of time before he was brought to the court for arraignment, before he was ordered released from Orleans Parish Prison, and the amount of time before the charges were ultimately resolved.[11] This timeline goes to the disruption of Lyle Dotson's life caused by the false charges Defendant McCartney placed on him, supporting Plaintiff's mental and emotional damages claim. Further, the document, including information about the ultimate resolution of the case, goes to the value of the services rendered by the attorneys and investigators hired and paid by the Dotsons, supporting the special damages claim for "incurred expenses associated with defense and expungement of the wrongful arrest and associated charge."[12] Evidence that is

---

[10] ECF 117- 2. The precise contours of the evidence Defendants seek to exclude is unclear. Defendants begin with a request to prohibit "testimony or evidence related to the dismissal/nolle prosequi of his criminal battery charge by the Orleans Parish District Attorney's Office" but Defendants' argument only addresses the Municipal Court Case Chronology. ECF 117-1 at 2-5. Accordingly, Plaintiffs will address the Municipal Court Case Chronology, but will not address other listed Exhibits which could also go to the criminal proceedings in municipal court as these Exhibits do not appear to be the subject of Defendants' motion. Plaintiff would establish relevance with a similar line of reasoning for those Exhibits as well.
[11] ECF 117-2.
[12] ECF No. 1 at 28 ¶ 77.

relevant to establishing and supporting Plaintiff's damages claims is considered under the same relevance standard as any evidence on the underlying liability where quantum and liability will not be tried separately.[13]

Defendants' reliance on Kerley is inapposite, given the document has not been proffered to establish Lyle Dotson's innocence, but simply to establish the fact of the criminal case, its timeline, and its resolution. In Kerley, evidence of the state court acquittal was proffered in a criminal case by the defense to "rebut inferences that may be drawn from the evidence that was admitted."[14] In a civil case, in which Plaintiff carries the burden of proof, the analysis of the probative value of a document must take into account what element the Plaintiff seeks to prove or support with his proffered evidence.

Similarly, Defendants' reliance on De Anda v. City of Long Beach[15] leaves out the critical fact that the plaintiff there sought to submit portions of transcript from one part of his previous criminal court prosecution for the sole purpose of establishing defendants in that case did not have probable cause. Plaintiff Dotson does not seek to submit only one portion of one hearing in the course of his state court criminal case, but proffers the Municipal Court Case Chronology as precisely what it is, a chronology of the proceedings against him.

In citing to Bochove v. Village of Corrales,[16] Defendants rely on an opinion that does not offer sufficient analysis of the underlying evidence plaintiffs proffered or the district court's basis for excluding it. The appellate court simply states that the district court did not abuse its discretion in granting the motion in limine. Bochove, an out of Circuit opinion, only

---

[13] Williams v. Hosp. Serv. Dist. of W. Feliciana Par., Louisiana, CV 15-00095-BAJ-RLB, 2017 WL 4316103, at *2 (M.D. La. Sept. 28, 2017)
[14] United States v. Kerley, 643 F.2d 299, 300 (5th Cir.1981) (citing United States v. Viserto, 596 F.2d 531, 537 (2d Cir. 1979)).
[15] De Anda v. City of Long Beach, 7 F.3d 1418, 1422 (9th Cir.1993).
[16] Bochove v. Vill. of Corrales, 183 Fed.Appx. 715, 721 (10th Cir.2006).

4

demonstrates to the discretion district courts have in ruling on Motions in Limine, but nothing more.

Given the relevance of the Municipal Court Chronology to Plaintiff's claims, the probative value of the document outweighs whatever curable prejudice the document or testimony about the dismissal of the municipal court charge might create.[17] Defendants are free to attempt to limit the document's force by presenting evidence that the District Attorney's office did not contact arresting officer, Huey McCartney, prior to dismissing the charges against Lyle Dotson. Further, Defendants can cite to the Municipal Court Chronology itself to explain that the dismissal did not result from any evidentiary hearing where a neutral adjudicator found facts regarding the encounter of October 7, 2015. There are a myriad if ways Defendants can couch these facts in whatever context they would like, thereby minimizing if not completely curing any potential prejudice. In giving the evidence the maximum reasonable probative value and minimum reasonable prejudicial impact,[18] this Court should find that Defendants' ability to contextualize the Municipal Court Chronology obviates the need for the extraordinary remedy of excluding relevant evidence

  b.  Municipal Court Chronology is not Hearsay

With regard to Defendants' hearsay contention the Municipal Court Chronology falls under the hearsay exception of public records. Fed. R. Evid. 803, which enumerates exceptions to the hearsay rule, provides:

> Public Records. A record or statement of a public office if:
> (A) it sets out:

---

[17] Fed. R. Evid. 403; see also United States v. McRae, 593 Fd. at 707; see also United States v. Williams, CR 14-153, 2016 WL 6600144, at *2–3 (E.D. La. Nov. 8, 2016).
[18] Fed. R. Evid. 403; United States v. McRae, 593 Fd. at 707; S.E.C. v. Peters, 978 F.2d at 1171 (citing J. Weinstein & M. Burger, *Weinstein's Evidence* ¶ 403[03], at 403–25 to 403–26 (1982); World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d at 1139; E.I. DuPont De Nemours & Co. v. Kolon Indus., Inc., 564 Fed.Appx. at 715.

5

(i) the office's activities;
(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.[19]

Applying this rule, Fifth Circuit case law:

> has recognized that Rule 803(8) is designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation. In the case of documents recording routine, objective observations, made as part of the everyday function of the preparing official or agency, the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present.[20]

Under the Fifth Circuit's assessment of the public records exception, public records are reliable because they are created by an official who is only "mechanically register[ing] an unambiguous factual matter."[21]

The Municipal Court Chronology falls squarely within the sort of records contemplated by Fed. R. 803(8) and the Fifth Circuit. The document sets out a timeline of events observed in the New Orleans Municipal Court which the Municipal Clerk's Office is required to document and report. The New Orleans Home Rule Charter provides:

> The clerk of municipal court shall have general supervision of the deputy clerks and records of the several courts. He shall also receive and keep all papers, exhibits and affidavits, number them according to the date of their filing and enter them in a docket containing an index in the manner set forth in this section. **He shall make a filing entry into the police department computer records showing the current and final disposition of all municipal court cases**.[22]

---

[19] Fed. R. Evid. 803(8).
[20] United States v. Quezada, 754 F.2d 1190, 1194 (5th Cir. 1985) (internal citations omitted).
[21] Id.; See also United States v. El-Mezain, 664 F.3d 467, 498–99 (5th Cir. 2011), as revised (Dec. 27, 2011); Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1308 (5th Cir. 1991).
[22] New Orleans Home Rule Charter, § 50-40 (emphasis added).

The New Orleans Home Rule Charter further provides that the Municipal Clerk's Office is responsible for allotting and fixing dates of arraignment.[23] The following provision provides the "docket shall show the disposition made of each case . . . ."[24] Thus, the Municipal Court is legally required to routinely document and report all of the information contained in the Municipal Court Chronology.. Further, the Municipal Court Chronology contains unambiguous factual information mechanically recorded by Municipal Court staff without an interest in and without preparation for the instant civil litigation. Lastly, Defendants have made no claim nor offered any evidence that the Municipal Court Chronology is untrustworthy in any way. Accordingly, the Municipal Court Chronology meets the standard for a public record under Fed. R. Evid. 803(8) and Fifth Circuit case law and should not be considered hearsay.

### III. NOPD Consent Decree

An element of Plaintiff's claim is that Defendant Edmonson failed to provide appropriate training to Louisiana State Police troopers designed to assist them with performing functions outside the Louisiana State Police's normal duties, namely pedestrian patrol in a diverse urban area.[25] The September 2015 Cooperative Endeavor Agreement (CEA) entered into by the City of New Orleans and Defendant Col. Edmonson recognized the need for specialized training by including as an obligation for the Superintendent:

> Require all Shift Supervisors to train Officers working a Patrol Shift in the Area for the first time on the New Orleans City Code ordinances pertinent to patrolling in the District as well as on handling public safety situations that are specific to a tourist-dense French Quarter.[26]

---

[23] Id. at §50-87.
[24] Id. at §50-88.
[25] ECF No. 1 at 24-25.
[26] Exhibit 1 at 21.

The New Orleans Police Department (NOPD) Consent Decree establishes strategies and measurable requirements designed to enable a law enforcement agency to build up its institutional structures to provide constitutionally adequate policing in a diverse urban area.[27] The NOPD policies developed pursuant to the Consent Decree provide further example of one mechanism for providing this constitutionally adequate policing. Plaintiff's expert, Dr. Robert Taylor, offers his opinion on what policies and training a reasonable constitutionally adequate department would have available for law enforcement officers tasked with maintaining public safety in a crowded diverse urban area.[28]

The Consent Decree and NOPD Policies are one example Dr. Taylor intends to offer of polices, practices, and procedures specifically designed to comport with the United States Constitution and national best practices. The relevance and importance of discussing the NOPD Consent Decree and NOPD Policies in a general discussion of national best practices is that both the Consent Decree and the Policies offer specific application of national best practices to New Orleans' unique demographic, geographic, and sociological features. The Consent Decree and NOPD Policies should have provided an invaluable resource to Defendant Edmonson in meeting his obligations to train Louisiana State Police Troopers working a patrol shift in the French Quarter. The gap between the policies and training Defendant Edmonson offered to troopers working in the French Quarter and constitutionally adequate policing goes to the inadequacies of the Defendant Edmonson's policies and training. This gap is partially illustrated by example through discussing the gap between the State Police policies and training and the NOPD Consent Decree and NOPD Policies. The NOPD Consent Decree thus provides the jury relevant

---

[27] <u>United States v. City of New Orleans</u>, E.D. La 2:12-cv-1924, ECF No 2-1 at 6.
[28] ECF No. 70-2 at 20, para 78; ECF No. 79-2 at 3-4, para 7-11, 5-6, para 15 – 18.

information to the claims against Edmonson; thus Plaintiff should not be barred from discussing the Decree in whole or in part.

### IV. Previous Incidents

Another element of Plaintiff's claim against Defendant Edmonson is that he was aware of and helped establish a pattern and practice of unconstitutional stops and arrests in the French Quarter specifically.[29] The evidence of previous incidents Plaintiff includes in the exhibits Defendants seek to exclude[30] relate to the 2013 stop of Sidney Newman and Ferdinand Hunt and other stops performed by Louisiana State Police Troopers in and around the French Quarter. These document go directly to Defendant Edmonson's role in establishing a pattern and practice of unconstitutional stops and arrests.

Indeed, Defendant Edmonson was personally familiar with the incident and the investigation thereof. With regard to the LSP internal affairs investigation[31] in the February 2013 incident, Defendant Edmonson testified,

> 4 I think what's -- what's important
> 5 to know here too is this -- this document, if you
> 6 read it, it's indicative of how we approach a
> 7 situation like this. It's the seriousness that
> 8 we take when someone makes an allegation. It's
> 9 not just brushed off. It's just not -- it's
> 10 let's find out what happened, let's watch a few
> 11 things, let's talk with a couple people and then
> 12 let's move on. We take things very serious.
> 13 Like if you see from this incident, we
> 14 interviewed everybody involved. It was an
> 15 incident that was certainly in the news media.[32]

---

[29] ECF No. 1 at 14 – 15.
[30] Exhibits 57, 69, and 71 in Plaintiffs' Supplemental Witness and Exhibit List, ECF No. 83.
[31] Exhibit 69 in ECF No 83.
[32] ECF No. 90-16 at 75:4-15.

Defendant Edmonson's own testimony reflects the relevance of the incident reports as "indicative" of his approach to allegations of unconstitutional policing. The letter Defendants reference[33] is authored and signed by Defendant Edmonson himself and details Edmonson's defense of the troopers involved in the Newman and Hunt stop to Special Agent Michael Anderson of the FBI. The letter is relevant to show Defendant Edmonson's personal involvement in defending Louisiana State Police trooper practices.

Dr. Taylor specifically relied on the March 28, 2013 letter[34] from the Independent Police Monitor ("IPM") (including both the compilation of incidents included therein and the IPM's observation regarding the public perception that LSP engages in a stop and frisk practice of policing) as part of the basis for his opinion that Defendant Edmonson fostered a pattern and practice of biased policing.[35] The March 28, 2013 letter from the Independent Monitor is directly relevant to establishing the pattern and practice of troopers under Defendant Edmonson's direction.

Defendants' position that these three relevant pieces of evidence are mere unsupported innuendo does not comport with Defendant Edmonson's testimony about the internal investigations or Defendant Edmonson's ability to testify to his authorship and signing of the letter to the FBI. Further, documents from the Office of the Independent Monitor as a public entity, as well as media reports, can form credible bases for Dr. Taylor to extrapolate Defendant Edmonson's fostering the pattern and practice of unconstitutional policing.

Ultimately, Defendants' primary objection to the exhibits is not truly a question of relevancy or concern of undue prejudice, but rather their claim that they have been somehow

---

[33] Exhibit 71 in ECF No. 83.
[34] Exhibit 57 in ECF No. 83.
[35] ECF No. 70-2 at 17.

prejudiced by not having the documents listed on Plaintiffs' November 7, 2017 exhibit list. Plaintiff presented and Defendant Edmonson testified to the internal affairs investigation documents in his November 16, 2017 deposition.[36] Edmonson was entirely unsurprised by the documents; he knew both quite well. Defendants have been afforded ample opportunity to review the documents and formulate their objections, as their discussion in the Motion in Limine demonstrates.[37] Given that exclusion of relevant evidence is an extraordinary measure.[38] Defendants' position that exhibits not included in an initial exhibit list, but timely included in a supplement authorized by the Court's scheduling orders, is at odds with the spirit and intention of the Federal Rules of Evidence.[39]

## V. CONCLUSION

The areas of evidence Defendants seek to exclude are relevant to proving essential elements of Plaintiff's claim. In accordance with the Federal Rules of Evidence, any relevant evidence not otherwise barred should be admitted into evidence. Defendants have not established an adequate basis for excluding these three relevant areas of evidence. Accordingly, Defendants' Motion in Limine should be denied.

---

[36] ECF No. 90-16 at 75:4-15.
[37] ECF No. 117-1.
[38] United States v. Williams, CR 14-153, 2016 WL 6600144, at *2–3 (E.D. La. Nov. 8, 2016).
[39] Fed. R. Evid. 401.

Respectfully Submitted,

*/s/James Craig*

_____
James Craig, LSBN # 33687
Emily Washington, LSBN # 34143
Roderick & Solange MacArthur Justice Center
4400 S. Carrolton Ave.
New Orleans, LA 70119
Tel. 504-620-2259

- AND -

_____
Elizabeth Cumming, LSBN #31685
316 S. Dorgenois Street
New Orleans, LA 70119
Tel. 504-822-4455
Fax. 504-822-4458
Elizabeth.cumming@ecumminglaw.com

*Attorneys for Plaintiffs*

Date: January 10, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2018, I served the foregoing on all counsel of record via the court's Case Management / Electronic Case Files (CM /ECF) system.

                                                          s/ Elizabeth Cumming