## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LYLE DOTSON AND OLON DOTSON, | * | NUMBER: 16-cv-15371-SM-JVM |
| Plaintiffs, | * | |
| | * | |
| v. | * | SECTION: E |
| | * | |
| COL. MICHAEL EDMONSON, | * | JUDGE: |
| TROOPER HUEY MCCARTNEY, | * | SUSIE MORGAN |
| TROOPER CALVIN ANDERSON, | * | |
| TROOPER TAGEE JOURNEE, | * | MAGISTRATE: |
| TROOPER RENE BODET, each in their | * | JANIS VAN MEERVELD |
| individual capacities. | * | |
| Defendants. | * | |
| _____ | * | |

## JOINT SUBMISSION ON PROPOSED JURY INSTRUCTIONS

### I.  JOINT INTRODUCTORY INSTRUCTIONS

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.

1

## II.  INSTRUCTION ON BURDEN OF PROOF

### A.  Plaintiff's Proposed Instruction on Burden of Proof: Preponderance of the Evidence

Plaintiff Lyle Dotson has the burden of proving his case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. It does not mean Plaintiff Lyle Dotson must prove his case beyond a reasonable doubt. The preponderance of the evidence burden is less than reasonable doubt. If you find that Plaintiff Lyle Dotson has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim.

### B.  Basis of Plaintiff's Proposed Instruction:

Plaintiff seeks to include a statement of the relationship between preponderance of the evidence and reasonable doubt to help clarify the distinction between the standards for jurors who may be more familiar with the reasonable doubt standard from popular culture.  Plaintiff's proposed instruction is an accurate statement of the law.

### C.  Defendants' Proposed Instruction on Burden of Proof:  Preponderance of the Evidence

Plaintiff Lyle Dotson has the burden of proving his case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff Lyle Dotson has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim.

### D.  Basis of Defendants' Objection:

Defendants object to Plaintiff's inclusion of language altering the Fifth Circuit Pattern Jury Instruction.  Defendants submit that Fifth Circuit Pattern Jury Instruction § 3.2 should be used.

## III. JOINT INSTRUCTION ON EVIDENCE

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

## IV. ADVERSE INFERENCE INSTRUCTION: SPOLIATION

### A.  Plaintiff's Proposed Adverse Instruction

An adverse inference instruction is one of the proposed remedies in Plaintiff's Motion for Sanctions for Spoliation of Evidence.[1]

---

[1] ECF No. 120.

### B.  Defendants' Objection to Adverse Inference Instruction

Defendants have opposed the Motion for Sanctions for Spoliation of Evidence[2] and dispute that any adverse instruction should be given.

## V. JOINT INSTRUCTION ON CHARTS AND SUMMARIES

Certain charts and summaries have been shown to you solely to help explain or summarize the facts disclosed by the books, records, and other documents that are in evidence. These charts and summaries are not evidence or proof of any facts. You should determine the facts from the evidence.

## VI. JOINT INSTRUCTION ON DEMONSTRATIVE EVIDENCE

Exhibit 30, Map of French Quarter, is an illustration. It is a party's map used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

## VII.    JOINT INSTRUCTION ON STIPULATIONS OF FACT

A "stipulation" is an agreement. When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts. You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.

## VIII.    JOINT INSTRUCTION ON STIPULATED TESTIMONY

A "stipulation" is something that the attorneys agree is accurate. When there is no dispute about certain testimony, the attorneys may agree or "stipulate" to that testimony. Stipulated testimony must be considered in the same way as if that testimony had been received here in court.

## IX. INSTRUCTION ON WITNESSES

### A.  Plaintiff's Proposed Instruction on Witnesses

You alone are to determine the credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness' manner and demeanor on the witness stand, any feelings, interest, prejudice, or bias about the case that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony should be accepted if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not which side has more witnesses, but the convincing force of the evidence. The testimony of

---

[2] ECF No. 128.

just one witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that one witness.

### B. Basis for Plaintiff's Proposed Instruction:

Plaintiff's instructions point to the weight of the juror's assessment of witness credibility.

### C. Defendant's Proposed Instruction on Witnesses

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

### D. Defendant's Objection to Plaintiff's Instruction:

Defendants object to Plaintiff's inclusion of language altering the Fifth Circuit Pattern Jury Instruction. Defendants submit that Fifth Circuit Pattern Jury Instruction should be used.

### X. JOINT INSTRUCTION ON IMPEACHMENT BY WITNESS' INCONSISTENT STATEMENTS

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

### XI. JOINT INSTRUCTION ON LAW ENFORCEMENT OFFICER TESTIMONY

You are required to evaluate the testimony of a law enforcement officer as you would the testimony of any other witness. No special weight may be given to his or her testimony because he or she is a law enforcement officer.

### XII.   JOINT INSTRUCTION ON EXPERT WITNESSES

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

### XIII.   DEFENDANTS' PROPOSED INSTRUCTION ON NO INFERENCE FROM FILING SUIT

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.[3]

### XIV.   PLAINTIFF'S PROPOSED INSTRUCTION ON LYLE DOTSON'S CLAIMS:

#### A.   Plaintiff's Proposed Instruction

A.     Plaintiff Lyle Dotson claims that Defendants McCartney, Anderson, Bodet, Journee and Edmonson violated the following constitutional rights:

1.     The constitutional protection from unreasonable stop;

2.     The constitutional protection of the right to be left alone;

3.     The constitutional protection from unreasonable arrest or "seizure";

4.     The constitutional protection from unequal treatment on the basis of race;

5.     The constitutional protection from deprivation of liberty without due process of law.

B.     To recover damages for these constitutional violations, Plaintiff Lyle Dotson must prove by a preponderance of the evidence that:

1.     One or more of Defendants McCartney, Journee, Anderson, Bodet, and Edmonson committed acts that violated some or all of the constitutional rights set forth above.[4]

2.     The constitutional violations you find, if any, caused harm or injury to Lyle Dotson. In determining the question of causation, you should decide whether the defendant's wrongful conduct that you find, if any, was a substantial factor in the resulting harm or injury.[5] It need not

---

[3] Fifth Circuit Pattern Jury Instructions (rev. 2016), § 3.6
[4] Fifth Circuit Pattern Instruction § 10.1.
[5] Murray v. Earle, 405 F.3d 278, 292 (5th Cir. 2005)(examining superseding cause and applying twin tenets of tort law of liability for foreseeable consequence and the possibility of intervening superseding cause by a neutral decision maker); see also Manuel v. City of Joliet, Ill., 137 S.Ct. 911, 197 L.Ed.2d 312 (2017)(finding that when a probable

be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the harm.

C.      Where a law enforcement officer provides false or misleading information and as a result the plaintiff was wrongfully searched, arrested, incarcerated and/or prosecuted, the officer who provided this false information can be held liable for the harm and injury suffered.[6]

D.      It is not necessary to find that a defendant had any specific intent to deprive the plaintiff of his constitutional rights, or that he acted with malice or ill will in order to find for the plaintiff. The plaintiff is entitled to relief if a defendant intended the actions which resulted in a violation of his constitutional rights.[7]

E.      In this case the parties have agreed that Defendants acted "under color" of state law, and you must accept that fact as proved.

### B. Defendants' Objections to Instruction:

Plaintiff provides no citations in support for this instruction. Plaintiff's claims of "unequal treatment on the basis of race" and due process claims were not identified by Plaintiff as claims in his memorandum requested by the Court listing his claims. Defendants submit that this instruction is unnecessary.

### C. Plaintiff's Basis for Instruction:

One of the theories supporting Plaintiff's claim that the stop was unconstitutional involves the use of racial description in the identification of the person to be stopped and misidentification of that person based on race.[8] Those theories were expressly argued at the hearing on Defendants' motion for summary judgment and motion in limine, and the Court indicated that this was a permissible basis for Plaintiff's claims on the unconstitutionality of the stop, as contrasted from a general argument against racism in policing nationally, which the Court opined would be irrelevant and inflammatory. The Fourth Amendment claims are by definition due process claims and the jury should be instructed accordingly.[9] Plaintiff's instruction is based as much as possible on the Fifth Circuit Pattern Instruction, but a significant portion of Plaintiff's claim is not addressed by the Fifth Circuit Pattern Instruction.

---

cause determination is based on false or manufactured evidence, the Fourth Amendment violation continues); Egervary v. Young, 366 F.3d 238, 248 (3d Cir. 2004)(finding "[t]o the extent that the common law recognized the causal link between a complaint and the ensuing arrest, it was in the situation where 'misdirection' by omission or commission perpetuated the original wrongful behavior.").

[6] Id.

[7] Graham v. Connor, 490 U.S. 386 (1989)(stating "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.")

[8] ECF 1 at ¶¶ 15, 20-26, 61-63, 67-69; ECF 112-1 at 2.

[9] Id.

**XV.   PLAINTIFF'S PROPOSED INSTRUCTION ON UNREASONABLE STOP AND SEIZURE:**

Plaintiff Lyle Dotson raises three claims of violation of his constitutional right not to be subject to an unreasonable stop and seizure. First, he claims that when Defendants McCartney, Anderson, Bodet, and Journee first stopped him on Toulouse Street in the French Quarter, that stop violated Lyle's Fourth Amendment right to be protected from unreasonable stop and his Ninth Amendment right to be left alone on a public street, which are guaranteed by the Fourteenth Amendment.

Second, Lyle Dotson also claims that by handcuffing him and holding him by the arms without a specific need to do so, Defendants McCartney, Anderson, and Journee violated his Fourth Amendment right not to be seized or arrested without probable cause.

Third, Lyle Dotson claims that his Fourth Amendment protection from unreasonable seizure of his person was violated when Defendants Anderson, Journee and McCartney continued to hold him after any reasonable suspicion had been satisfied by their questioning of Lyle and their confirmation that his Indiana drivers' license was genuine and he had no pending warrants. Lyle Dotson claims that his continued detention while attempting to take his photograph against his wishes violated his Fourth Amendment rights.

I will first explain the law regarding stopping an individual for investigative purposes. When a law enforcement officer stops an individual without the authority of a warrant from a judge, the Fourth Amendment requires that the officer have "reasonable suspicion" that the person is involved in a crime that has been or is about to be committed.[10]

Reasonable suspicion does not require proof beyond a reasonable doubt, but it must be based on specific and articulable facts from the totality of the circumstances. A vague, un-particularized suspicion or hunch is not enough to form "reasonable suspicion" that would allow a law enforcement officer to stop an individual.[11] The question is whether a reasonable officer would believe that Lyle Dotson was involved in a crime that had been or was about to be committed based on the facts available to that officer based on information the officer had in the course of the stop.[12]

Even if reasonable suspicion is present at the beginning of a stop, if additional information comes to light and the totality of the circumstances no longer supports reasonable suspicion, then the stop must end immediately and the individual is free to go.[13]

If the stop is unreasonable under the Fourth Amendment, then under Louisiana law, an individual has a right to resist the stop.[14]

Now I will explain the law governing handcuffing an individual during an investigative stop.

---

[10] Terry v. Ohio, 392 U.S. 1(1968).

[11] Id.

[12] Ybarra v. Illinois, 444 U.S. 85; Goodson v. City of Corpus Christi, 202 F. 3d 730, 737 (5th Cir. 2000).

[13] United States v. Sharpe, 470 U.S. 675, 682 (1985); United State v. Machuca-Barrera, 261 F. 3d 425, 431 (5th Cir. 2001).

[14] La. R.S. 14:108; State v. Manuel, 2006-0486 (La.App. 4 Cir. 11/21/06), 946 So.2d 245, writ denied, 2006-2981 (La. 9/14/07), 963 So.2d 994 (holding plain language of La. R.S. 14:108 creates a right to resist unlawful detention and/or arrest).

The Fourth Amendment prohibits the unreasonable "seizure" of a person. A person is seized within the meaning of the Fourth Amendment when in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.[15] Examples of circumstances that might indicate a seizure even where the person did not attempt to leave, would be the threatening presence of several officers, some physical touching of the body, and handcuffing.[16]

Handcuffing an individual does not automatically convert an investigatory stop into an arrest requiring probable cause.[17] For the use of handcuffs during an investigative stop, the Fourth Amendment requires some reasonable belief that the individual is armed and dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the totality of the circumstances.[18]

Also, when a law enforcement officer handcuffs an individual during an investigative stop when less intrusive measures would have allowed the officer to safely conduct his investigation, the stop has become a seizure and must be justified by probable cause.[19]

A law enforcement officer has probable cause to seize or arrest a person when he has a reasonable belief that a crime has been committed and that the person arrested has committed or participated in the crime.  Probable cause is a higher standard than reasonable suspicion, but a lower standard than beyond a reasonable doubt. Probable cause must be based on a fair probability that an actual criminal action took place.[20]

If the seizure or detention is unreasonable under the Fourth Amendment, then under Louisiana law, an individual has a right to resist the arrest.[21]

Finally, the reasonableness of either a stop or a seizure must be judged on what a reasonable officer would do under the circumstance, and does not consider the subjective, personal state of mind of Defendants McCartney, Anderson, Bodet, and Journee.[22]

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendant Bodet did not have reasonable suspicion to order the stop of Lyle Dotson on October 7, 2015, then Defendant Bodet violated Plaintiff Lyle Dotson's constitutional rights to be free from unreasonable stops and his right to be left alone and you must consider whether Defendant Bodet is entitled to qualified immunity, which is a bar to liability that I will explain later.

---

[15] California v. Hodari D., 499 U.S. 621, 627-28 (1991); U.S. v. Mendenhall, 446 U.S. 544 (1980).

[16] Id.

[17] United States v. Jordan, 232 F.3d 447, 450 (5th Cir. 2000), citing United States v. Sanders, 994 F.2d 200, 206 (5th Cir. 1993).

[18] Id.; Bennett v. City of Eastpointe, 410 F.3d 810, 836 (6th Cir. 2005).

[19] Id.

[20] McGaughy v. City of Hous., 77 Fed. Appx. 280, 282 (5th Cir. 2003); United States v. Garcia, 179 F. 3d 265, 269 (5th Cir. 1999).

[21] La. R.S. 14:108; State v. Manuel, 2006-0486 (La.App. 4 Cir. 11/21/06), 946 So.2d 245, writ denied, 2006-2981 (La. 9/14/07), 963 So.2d 994 (holding plain language of La. R.S. 14:108 created a right to resist unlawful detention and/or arrest).

[22] See Fifth Circuit Pattern Instruction § 10.1; Graham v. Connor, 490 U.S. 386 (1989)(stating "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.")

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendant McCartney, Defendant Journee, and Defendant Anderson, or any of them, did not have reasonable suspicion to stop Lyle Dotson on October 7, 2015, then that Defendant or Defendants violated Plaintiff Lyle Dotson's constitutional rights to be free from unreasonable stops and his right to be left alone and you must consider whether that Defendant or Defendants is entitled to qualified immunity, which is a bar to liability that I will explain later.

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendant McCartney, Defendant Journee, and Defendant Anderson, or any of them, did not have a reasonable belief, based on the totality of the circumstances, that Lyle Dotson was armed and dangerous or that the restraints were necessary for some other legitimate purpose, or that the Defendant or Defendants did not have probable cause to believe that a crime had been committed and that Lyle Dotson was a participant in that crime, then that Defendant or Defendants violated Plaintiff Lyle Dotson's constitutional rights to be free from unreasonable seizures and you must consider whether that Defendant or Defendants is entitled to qualified immunity, which is a bar to liability that I will explain later.

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendant Bodet did not have reasonable suspicion to order the continued seizure of Lyle Dotson to take his photograph on October 7, 2015, then Defendant Bodet violated Plaintiff Lyle Dotson's constitutional right to be free from unreasonable stops and seizures and his right to be left alone and you must consider whether Defendant Bodet is entitled to qualified immunity, which is a bar to liability that I will explain later.

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendant McCartney, Defendant Journee, and Defendant Anderson, or any of them,  did not have reasonable suspicion to continue the stop and/or seizure of Lyle Dotson to take his photograph on October 7, 2015, then that Defendant or Defendants violated Plaintiff Lyle Dotson's constitutional right to be free from unreasonable stops and seizures and his right to be left alone and you must consider whether that Defendant or Defendants is entitled to qualified immunity, which is a bar to liability that I will explain later.

### A. Basis for Plaintiff's Proposed Instruction on Unreasonable Stop and Seizure:

Plaintiff notes the Fifth Circuit pattern instructions only concern a relatively narrow range of claims, particularly focusing on probable cause, false arrest, and use of force. A significant portion of Plaintiff's claims concern the period leading up to the stop and the detention prior to the actual arrest, and Plaintiff maintains educating the jury on the standards applicable during this time period is essential for the jury to render a fair verdict.

### XVI. PLAINTIFF'S PROPOSED INSTRUCTIONS ON UNREASONABLE ARREST:

Plaintiff Lyle Dotson claims Defendants McCartney, Anderson, and Journee violated his Fourth Amendment Right to be protected from unreasonable arrest or seizure, Fourteenth Amendment Right to Due Process, and his Ninth Amendment Right to be left alone by falsely arresting him on the charge of Battery of an Officer. Plaintiff Lyle Dotson claims that Defendants McCartney, Anderson, and Journee did not have probable cause to arrest him on October 7, 2015 because he did not kick or otherwise intentionally strike Defendant McCartney.

A warrantless arrest such as the one involved in this case is considered unreasonable under the Fourth Amendment when, at the moment of the arrest, there is no probable cause for the defendants to reasonably believe that a crime has been committed and that the person arrested has committed or participated in the crime.[23]   Probable cause does not require proof beyond a reasonable doubt, but it must be based on a fair probability that an actual criminal action took place. If the arrest is unreasonable under the Fourth Amendment, then under Louisiana law, an individual has a right to resist the arrest.[24]

Finally, the reasonableness of the arrest must be judged on what a reasonable officer would do under the circumstance, and does not consider Defendants McCartney, Anderson, and Journee's subjective state of mind.  The question is whether a reasonable officer would believe that a crime had been committed based on the facts available to that officer based on information the officer had at the time of the arrest.[25]

To help you determine whether the Defendants McCartney, Anderson, and Journee had probable cause to arrest Plaintiff Lyle Dotson, I will now instruct you on the elements of the crime for which Plaintiff Lyle Dotson was arrested, Battery on a Police Officer, La. R.S. 14:34.2.

Battery defined in La. R.S. 14:33 requires the (1) intentional, (2) unjustified[26], (3) use of force or violence, (4) on another person.  A battery on a police officer requires (1) a battery (as defined above) without consent (2) "when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty."[27]

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendants McCartney, Anderson, and Journee, or any of them, did not have probable cause to arrest Lyle Dotson for Battery on an Officer on October 7, 2015, then that Defendant or Defendants violated Plaintiff Dotson's constitutional right to be free from unreasonable arrest or "seizure" and you must then consider whether Defendant is entitled to qualified immunity which is a bar to liability that I will explain later.

---

[23] See Fifth Circuit Pattern Instruction § 10.1; Devenpeck v. Alford, 543 U.S. 146, 152 (2004).

[24] McGaughy v. City of Hous., 77 Fed. Appx. 280, 282 (5th Cir. 2003); United States v. Garcia, 179 F. 3d 265, 269 (5th Cir. 1999).

[25] See Fifth Circuit Pattern Instruction § 10.1; Graham v. Connor, 490 U.S. 386 (1989)(stating "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.")

[26] La. R.S. 14:18; State v. Haydin, 17-234, p. 7-8 (La.App. 5 Cir. 12/20/17), 2017 WL 6503799 (stating "[t]he use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person . . . .").

[27] La. R.S. 14:33.

**A.  Basis for Plaintiff's Proposed Instruction on Unreasonable Stop and Seizure:**

Plaintiff notes the Fifth Circuit pattern instructions only concern a relatively narrow range of claims, particularly focusing on probable cause, false arrest, and use of force. Where possible, Plaintiff has drawn from the Fifth Circuit Pattern Instruction. However, where the pattern instruction is silent, Plaintiff maintains educating the jury on the standards applicable during this time period is essential for the jury to render a fair verdict.

**B.  Defendant's Proposed Instruction on Unreasonable Arrest and Seizure:**

Plaintiff, Lyle Dotson, claims that Defendants, Calvin Anderson, Rene Bodet, Tagie Journee, and Huey McCartney, violated the constitutional protection from unreasonable arrest or "seizure."

To recover damages for this alleged constitutional violation, Plaintiff, Lyle Dotson, must prove by a preponderance of the evidence that:

1.     Defendant Calvin Anderson, Rene Bodet, Tagie Journee, or Huey McCartney committed an act that violated the constitutional rights Plaintiff Lyle Dotson claims were violated;  and

2.     That Defendant's acts were the cause of Plaintiff Lyle Dotson's damages.

The first right Plaintiff Lyle Dotson claims Defendants Calvin Anderson, Rene Bodet, Tagie Journee, and Huey McCartney violated is the Fourth Amendment right to be protected from an unreasonable arrest or seizure.  Plaintiff Lyle Dotson seeks to establish his claim in one of four different ways.  First, he claims that when he was first stopped by Defendants Calvin Anderson, Rene Bodet, Tagie Journee, and Huey McCartney, this violated his right to be protected from an unreasonable stop.  Second, he claims that Defendant Calvin Anderson violated his rights by handcuffing Lyle Dotson during the stop prior to the time that he was formally placed under arrest. Third, he claims that his rights were violated when Defendants Calvin Anderson, Tagie Journee, and Huey McCartney continued to detain him after confirming his driver's license.  Fourth, he claims that his rights were violated when he was arrested by Defendant Huey McCartney for battery of a police officer.

To establish this claim, Plaintiff Lyle Dotson must show that the arrest or seizure was unreasonable.

The Fourth Amendment permits a law enforcement officer to make an investigative stop exists when an officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity."[28]  The standard takes into account "the totality of the circumstances – the whole picture."[29]   The level of suspicion required is considerably less than proof of wrongdoing by a preponderance of the evidence.[30]  Reasonable suspicion does not need to be based solely on an officer's personal observation, but can be based on information supplied to a law enforcement by another person if the officer reasonably perceives that the information provided to him is reliable.[31]

---

[28] Navarette v. California, 134 S.Ct. 1683, 1687 (2014).
[29] Id.
[30] Id.
[31] Id.

If you find that Plaintiff Lyle Dotson has proved by a preponderance of the evidence that Defendants Calvin Anderson, Rene Bodet, Tagie Journee, and Huey McCartney lacked reasonable suspicion based on the totality of the circumstances to make the investigative stop on October 7, 2015, then Defendants violated Plaintiff Lyle Dotson's constitutional right to be free from unreasonable arrest or "seizure." You must then consider whether each Defendant is entitled to qualified immunity, which is a bar to liability that I will explain later.

Handcuffing a suspect does not automatically convert an investigatory detention into an arrest.[32]

A warrantless arrest such as the one involved in this case is considered unreasonable under the Fourth Amendment when, at the moment of the arrest, there is no probable cause for the defendant to reasonably believe that a crime has been or is being committed. Probable cause does not require proof beyond a reason able doubt, but only a showing of a fair probability of criminal activity. It must be more than bare suspicion, but need not reach the 50% mark.

Finally, the reasonableness of an arrest must be judged based on what a reasonable officer would do under the circumstances, and does not consider Defendant Calvin Anderson, Rene Bodet, Tagie Journee, or Huey McCartney's state of mind. The question is whether a reasonable officer would believe that a crime was, or was being, committed based on the facts available to that officer at the time of the arrest.

To help you determine whether Defendant Huey McCartney had probable cause to arrest Plaintiff Lyle Dotson, I will now instruct you on the elements of the crime for which he was arrested. Plaintiff Lyle Dotson was arrested for Battery of a Police Officer in violation of La. R.S. 14:34.2. Battery is the intentional use of force or violence upon the person of another. Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty.

If you find that Plaintiff Lyle Dotson has proved by a preponderance of the evidence that Defendant Huey McCartney lacked probable cause to make the arrest on October 7, 2015, then Defendant Huey McCartney violated Plaintiff Lyle Dotson's constitutional right to be free from unreasonable arrest or "seizure," and you must then consider whether Defendant Huey McCartney is entitled to qualified immunity, which is a bar to liability that I will explain later. If Plaintiff Lyle Dotson failed to make this showing, then the arrest was constitutional, and your verdict will be for Defendant Huey McCartney on the unreasonable arrest claim.[33]

### C. Basis of Defendants' Submission of Disputed Instructions:

Plaintiff provides no citations in support of their instructions. Plaintiff's proposed instruction deviates substantially from the Fifth Circuit Pattern Jury Instructions and from relevant law.

---

[32] United States v. Jordan, 232 So.3d 447, 450 (5th Cir. 2000).
[33] Fifth Circuit Pattern Jury Instructions (rev. 2016), § 10.1.

## XVII. PLAINTIFF'S PROPOSED INSTRUCTION ON DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS:

Plaintiff Lyle Dotson claims Defendant McCartney violated his right to be free of false arrest and detention by manufacturing evidence against him in violation of his Fourteenth Amendment right to Due Process of Law. Plaintiff Lyle Dotson claims that Defendant McCartney manufactured evidence that Plaintiff Lyle Dotson intentionally kicked Defendant McCartney. Where a person has been deprived of liberty as a result of false evidence that is manufactured by law enforcement officers, there is a deprivation of liberty without due process of law. "Evidence" refers not only to physical evidence, but also testimony by witnesses.[34] To prove this claim Plaintiff Lyle Dotson must show that it is more likely than not that Defendant McCartney manufactured evidence against Lyle Dotson which led him to spend 36 hours in Orleans Parish Prison.

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendant McCartney manufactured evidence against Lyle Dotson in order to arrest him on October 7, 2015, then Defendant McCartney violated Plaintiff Dotson's constitutional right to be free from false arrest and detention without due process of law and you must determine whether Defendant McCartney is entitled to qualified immunity, which is a bar to liability that I will explain later.

### A. Defendant's Objection to Instruction:

Defendant is, frankly, surprised that Plaintiff is attempting to add a claim alleging violation of due process which had never previously been identified to the Court.

### B. Plaintiff's Basis for Instruction:

This instruction does not create a new claim. This claim is clearly encompassed in Plaintiff's claims for False Arrest on Battery on an Officer and pled in Plaintiff's Complaint[35] and noted in the table of claims.[36]

## XVIII. PLAINTIFF'S PROPOSED INSTRUCTION ON EQUAL PROTECTION:

Plaintiff Lyle Dotson has claimed Defendants McCartney, Journee, Anderson, and Bodet violated his right to equal protection under the law in violation of his Fourteenth Amendment rights. Plaintiff Lyle Dotson claims that Defendants McCartney, Journee, Anderson, and Bodet stopped and seized him based on a general description relying predominantly on race, but that they failed to take into account other distinguishing features and circumstances beyond his race.[37]

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendants Bodet, McCartney, Journee, and Anderson, or any of them, stopped Lyle Dotson by unduly relying on his race then that Defendant or Defendants violated Plaintiff Lyle Dotson's constitutional right to equal protection and you must determine whether Defendants are entitled to qualified immunity which is a bar to liability that I will explain later.

---

[34] Mooney v. Holohan, 294 U.S. 103, 112(1935); Napue v. People of State of Ill., 360 U.S. 264, 269(1959); Miller v. Pate, 386 U.S. 1, 6 (1967); Rowe v. City of Fort Lauderdale, 279 F. 3d 1271(11th Cir. 2002).

[35] ECF No. 1 at ¶¶ 31, 32, 34, 35, 41, 61, 62, 68, 69, 75.

[36] ECF No. 112-1 at 3.

[37] Goodson v. City of Corpus Christi, 202 F. 3d 730, 737 (5th Cir. 2000).

## A. Defendant's Objection to Instruction:

Defendant is, frankly, surprised that Plaintiff is attempting to add additional claims not previously disclosed to the Court, particularly given the Court's clear instructions that this lawsuit will not be tried on the basis of race.

## B. Plaintiff's Basis for Instruction:

One of the theories supporting Plaintiff's claim that the stop was unconstitutional involves the use of racial description in the identification of the person to be stopped and misidentification of that person based on race.[38] Those theories were expressly argued at the hearing on Defendants' motion for summary judgment and motion in limine, and the Court indicated that this was a permissible basis for Plaintiff's claims on the unconstitutionality of the stop, as contrasted from a general argument against racism in policing nationally, which the Court opined would be irrelevant and inflammatory. The Fourteenth Amendment claims are by definition due process claims and the jury should be instructed accordingly.[39] Plaintiff understands the Court's instruction that the facts of Plaintiff's stop, detention, and arrest in which race plays a role will be tried. Plaintiff understands this case will not take in the broader current discussion of police relationship with minority communities. This instruction does not bar Plaintiff from presenting evidence and seeking a verdict on all elements of his claim.

## XIX. PLAINTIFF'S PROPOSED INSTRUCTION ON SUPERVISORY LIABILITY:

In addition to his claims against Defendants McCartney, Journee, Anderson and Bodet, Plaintiff Lyle Dotson is suing Defendant Edmonson, Superintendent of the Louisiana State Police at the time of this incident. A supervisory officer, like Defendant Edmonson, cannot be held liable only because his subordinate trooper violated someone's constitutional rights. To prove his claim against Defendant Edmonson, Plaintiff Lyle Dotson must show that Defendant Edmonson's own conduct caused the denial of Plaintiff Lyle Dotson's constitutional rights.

In this case, Plaintiff Lyle Dotson contends that Defendant Edmonson violated his constitutional rights by: (1) implementing unconstitutional policies that caused the constitutional violation;[40] (2) failing to train and/or supervise Defendants McCartney, Journee, Anderson, and/or Bodet;[41] and/or (3) failing to implement necessary policies to prevent violations of constitutional rights.[42]

To prevail in his claim against Defendant Edmonson, Plaintiff Lyle Dotson must prove by a preponderance of the evidence that:

1. Defendant Edmonson implemented unconstitutional policies and/or failed to train and/or supervise Defendants McCartney, Anderson, Journee, and Bodet.

---

[38] ECF 1 at ¶¶ 15, 20-26, 61-63, 67-69; ECF 112-1 at 2.

[39] Id.

[40] Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 420 (5th Cir. 2017) (a supervisory official may be held liable under Section 1983 for "implementing unconstitutional policies that result injury to a plaintiff").

[41] Davidson v. City of Stafford, Texas, 848 F.3d 384, 397 (5th Cir. 2017) (a supervisory official may be held liable under Section 1983 for failure to train or supervise).

[42] See e.g. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011).

2. As a result of the unconstitutional policies, failure to train and/or failure to supervise, someone under Defendant Edmonson's supervision violated Plaintiff Lyle Dotson's constitutional rights; and

3. Defendant Edmonson acted with deliberate indifference.

For a supervisory defendant to act with deliberate indifference, he must be: (1) aware of facts from which the inference could be drawn that a substantial risk of violating the constitution exists; and (2) a reasonable supervisor would have drawn the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. In other words, a defendant acts with deliberate indifference where he disregarded a known or obvious consequence of his action.

A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequence of not adopting a policy will be a deprivation of constitutional rights.[43]

To satisfy the deliberate indifference prong of a failure-to-train claim, Plaintiff Lyle Dotson must prove that Defendant Edmonson knew or should have known that a particular omission in the training program would cause employees to violate the constitutional rights of members of the public they encounter, but Defendant Edmonson nevertheless chose to retain that program. To prove deliberate indifference in this way, Plaintiff Lyle Dotson must show that the need for training was so obvious that constitutional violations were likely to occur without it or that improperly trained employees caused other constitutional violations.[44]

### A. Basis for Plaintiff's Instruction:

Plaintiff's formulation proposed above closely follows the Fifth Circuit's pattern jury instructions on supervisory liability. It also reflects the current case law jointly cited by the Defendants and the Plaintiff in their filings as to Defendants' motion for summary judgement, including Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 420 (5th Cir. 2017) (a supervisory official may be held liable under Section 1983 for "implementing unconstitutional policies that result injury to a plaintiff"), and Davidson v. City of Stafford, Texas, 848 F.3d 384, 397 (5th Cir. 2017) (a supervisory official may be held liable under Section 1983 for failure to train or supervise). And as reflected in Plaintiff's proposed instruction above, the Fifth Circuit has also held that a jury may find a supervisory official liable under Section 1983 for failing to implement necessary policies to prevent violations of constitutional rights. Additional language proposed by Plaintiff as to deliberate indifference also draws directly from this Fifth Circuit case law. Thus, Plaintiff's proposed instruction is an accurate statement of the law.

---

[43] Id.; City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989) (holding liability if "the need for training is obvious and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need . . . .").

[44] Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011) (finding a defendant acts with deliberate indifference where he "disregarded a known or obvious consequence of his action"); Bryan v. Jones, 530 F.2d 1210, 1215 (5th Cir. 1976) ("A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequence of not adopting a policy will be a deprivation of constitutional rights.").

### B.  Defendant's Proposed Instruction on Supervisory Liability:

In addition to his claims against Troopers Calvin Anderson, Rene Bodet, Tagie Journee and Huey McCartney, Plaintiff Lyle Dotson is suing Defendant, Col. Michael Edmonson, the former Superintendent of the Louisiana State Police. A supervisory officer, like Defendant Michael Edmonson, cannot be held liable merely because his subordinate officer violated someone's constitutional rights. To prove his claim against Defendant Michael Edmonson, Plaintiff Lyle Dotson must show that Defendant Michael Edmonson's own conduct denied Plaintiff Lyle Dotson his constitutional rights.

In this case, Plaintiff Lyle Dotson contends that Col. Michael Edmonson violated his constitutional rights by implementing unconstitutional policies that caused the constitutional violation and by failing to train or supervise the other defendant Troopers.

To prevail in his claim against Defendant Michael Edmonson, Plaintiff Lyle Dotson must prove by a preponderance of the evidence that:

1.  someone under Defendant Michael Edmonson's supervision violated his constitutional rights;

2.  Defendant Michael Edmonson either implemented unconstitutional policies or failed to train Troopers Calvin Anderson, Rene Bodet, Tagie Journee and Huey McCartney;

3.  The implementation of unconstitutional policies or failure to train caused the violation of the Plaintiff Lyle Dotson's rights; and

4.  Defendant Michael Edmonson acted with deliberate indifference.

For a supervising officer to act with deliberate indifference, he must be: (1) aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and (2) must actually draw that inference. Deliberate indifference requires a showing of more than negligence or even gross negligence.

To satisfy the deliberate indifference prong of a failure-to-train claim, Plaintiff Lyle Dotson must prove that Defendant Michael Edmonson knew or should have known that a particular omission in the training program would cause employees to violate the constitutional rights of members of the public they encounter, but Defendant Michael Edmonson nevertheless chose to retain that program. To prove deliberate indifference in this way, Plaintiff Lyle Dotson must show a pattern of similar constitutional violations by improperly trained employees. A single incident is generally not sufficient to show deliberate indifference.[45]

---

[45] Fifth Circuit Pattern Jury Instructions (rev. 2016), § 10.4.

### C.  Basis for Defendants' Objection:

Plaintiff substantially alters the Fifth Circuit Pattern Jury Instruction based on no legal citations and adds language that directly conflicts with the relevant law.

### XX.   PLAINTIFF'S PROPOSED INSTRUCTION ON QUALIFIED IMMUNITY:

As to each federal claim that you find Plaintiff Lyle Dotson proved by a preponderance of the evidence (that is, more likely than not), you must consider whether Defendants McCartney, Journee, Anderson, Bodet, and Edmonson are entitled to what the law calls "qualified immunity." Qualified immunity bars a law enforcement officer's liability even if he violated a plaintiff's constitutional rights, if the rights violated were not clearly established at the time of the violation.

Qualified immunity applies if a reasonable officer could have believed that the stop, seizure, and/or arrest of Lyle Dotson was lawful in light of clearly established law and the information Defendants possessed. But Defendants are not entitled to qualified immunity if at the time of the stop, seizure, and/or arrest of Lyle Dotson, a reasonable officer with the same factual information would understand that what he is doing violates Lyle's rights. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful – officials can still be on notice that their conduct violates established law even in novel factual circumstances. Law enforcement officers are presumed to know the clearly established constitutional rights of the individuals they encounter.

In this case, the clearly established law at the time of the stop, seizure, and arrest of Lyle Dotson was that:

1.     Law enforcement officers must have at least reasonable suspicion based on a totality of circumstances in order to stop or detain an individual.[46]

2.     Law enforcement officers cannot arrest an individual on the basis of reasonable suspicion.[47]

3.     Law enforcement officers cannot conduct a more intrusive or restrictive seizure on an individual than circumstances warrant.[48]

---

[46] United States v. Rodriquez, 564 F.3d 735, 740-41 (5th Cir. 2009), citing Terry v. Ohio, 392 U.S. 1, 21 (1968) ("Temporary, warrantless detentions of individuals constitute seizures for Fourth Amendment purposes and must be justified by reasonable suspicion that illegal activity has or is taking place.").

[47] Freeman v. Gore, 483 F.3d 404, 412-13 (5th Cir. 2007) (where investigative stop and detention becomes an arrest, it must be accompanied by probable cause, not merely reasonable suspicion: "The deputies next argue that they were justified in detaining Freeman for violating Texas law. The deputies first assert that, because they simply detained Freeman and did not arrest her, they needed only a reasonable suspicion that she was violating the law. The district court rejected this argument because it found that, viewing the facts in the light most favorable to Freeman, the deputies arrested her, rather than merely detaining her. We agree.").

[48] United States v. Jordan, 232 F.2d 447, 450 (5th Cir. 2000) ("Handcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause. The relevant inquiry is whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation."), citing United States v. Sanders, 994 F.2d 200, 206 (5th Cir. 1993).

4.   Once reasonable suspicion no longer exists, law enforcement officers cannot lawfully restrict the movement of the stopped individual for any period of time or for any purpose.[49]

5.   Law enforcement officers cannot manufacture evidence for the purpose of prolonging a stop and seizure.[50]

If, after considering the scope of discretion and responsibility generally given to Louisiana State Police troopers in performing their duties and after considering all of the circumstances of this case as they would have reasonably appeared to Defendants at the time of the stop, seizure, and arrest of Lyle Dotson, you find that Plaintiff Lyle Dotson did not prove that it was more likely than not, that that a reasonable trooper could have believed that the stop, seizure, and arrest of Lyle Dotson was lawful, then Defendants are entitled to qualified immunity, and your verdict must be for Defendants on those claims. But if you find that Defendants violated Plaintiff Lyle Dotson's clearly established constitutional rights and that Defendants are not entitled to qualified immunity as to that claim, then your verdict must be for Plaintiff Lyle Dotson on that claim.

### A. Basis for Plaintiff's Instruction:

Plaintiff's formulation proposed above closely follows the Fifth Circuit's pattern jury instructions on qualified immunity. Any additional language is supported by Supreme Court case law, and is proposed to assist the jury in understanding this complex legal concept. See e.g. Hope v. Pelzer, 536 U.S. 730, 739 (2002) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."); Id. at 741 ("[O]fficials can still be on notice that their conduct violated established law even in novel factual circumstances."). Thus Plaintiff's proposed instruction is an accurate statement of the law, and Defendants fail to direct the Court's attention to any alleged misstatements of law.

### B. Defendants' Proposed Instruction on Qualified Immunity:

As to each claim for which Plaintiff Lyle Dotson has proved each essential element, you must consider whether each individual Defendant is entitled to what the law calls "qualified immunity." Qualified immunity bars a defendant's liability even if he violated a plaintiff's constitutional rights. Qualified immunity exists to give government officials breathing room to make reasonable but mistaken judgments about open legal questions. Qualified immunity provides protection from liability for all but the plainly incompetent government officers, or those who knowingly violate the law. It is Plaintiff Lyle Dotson's burden to prove by a preponderance of the evidence that qualified immunity does not apply in this case.

---

[49] United States v. Machuca-Barrera, 261 F.3d 425, 431 (5th Cir. 2001) ("[Wh]en an officer stops a person based on reasonable suspicion of some crime, the officer may detain that person for only long enough to investigate that crime. Once the purpose justifying the stop has been served, the detained person must be free to leave."); United States v. Valadez, 267 F.3d 395, 398 (5th Cir. 2001) ("once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion").

[50] A seizure of an individual without probable cause violates the Fourth Amendment and gives rise to a Section 1983 claim for false arrest. See, e.g., Parm v. Shumate, 513 F.3d 135, 142 (5th Cir. 2007). And the manufacturing of evidence to support the seizure of a person has long been held violative of the Due Process Clause. Castellano v. Fragozo, 352 F.3d 939, 958 (5th Cir. 2003) ("Castellano's contention that the manufacturing of evidence and knowing use of perjured testimony attributable to the state is a violation of due process is correct"), citing Mooney v. Holohan, 294 U.S. 103 (1935). See also Whittington v. Maxwell, 455 Fed.Appx. 450, 459 (5th Cir. 2011).

Qualified immunity applies if a reasonable officer could have believed that the arrest of Lyle Dotson was lawful in light of clearly established law and the information Defendants. possessed.  But Defendants are not entitled to qualified immunity if, at the time of the arrest, a reasonable officer with the same information could not have believed that his actions were lawful. Law enforcement officers are presumed to know the clearly established constitutional rights of individuals they encounter.

In this case, the clearly established law at the time was that an investigative stop must be supported by reasonable suspicion and an arrest must be supported by probable cause.  As explained earlier, an arrest is unlawful when, at the moment of the arrest, there is no probable cause for the defendant to reasonably believe that a crime has been or is being committed.  Probable cause does not require proof beyond a reason able doubt, but only a showing of a fair probability of criminal activity.  It must be more than bare suspicion, but need not reach the 50% mark.

If, after considering the scope of discretion and responsibility generally given to police officers in performing their duties and after considering all of the circumstances of this case as they would have reasonably appeared to each Defendant at the time of the arrest, you find that Plaintiff Lyle Dotson failed to prove that no reasonable officer could have believed that the arrest was lawful, then Defendant is entitled to qualified immunity, and your verdict must be for Defendant on those claims. But if you find that any Defendant violated Plaintiff Lyle Dotson's constitutional rights and that the individual Defendant is not entitled to qualified immunity as to that claim, then your verdict must be for Plaintiff Lyle Dotson on that claim.[51]

### C.  Defendants' Basis for Objection:

Plaintiff deviates from the Fifth Circuit Pattern Jury Instruction and provides no citations for multiple misstatements of law.

### XXI.  PLAINTIFF'S PROPOSED TORT INSTRUCTION:

Plaintiff Lyle Dotson also claims that Troopers McCartney, Anderson, and Journee committed intentional state torts against him.

The basic law in Louisiana regarding this type of suit is Article 2315 of the Louisiana Civil Code. Article 2315 states: "Every act whatsoever of man that causes damage to another obliges him by whose fault it happened to repair it."[52]

The meaning of intentional is that the Defendant either desired to bring about the physical result of his act or believed they were substantially certain to follow from what he did. It is not limited to consequences which are desired. If the defendant knew the consequences were certain or substantially certain to result from his act, and he still commits the act, he is treated by the law as if he had, in fact, desired the result.

### A.  Defendants' Basis for Objection:

No citations are provided and the instruction is unnecessary given that instructions are provided for the individual alleged torts.

---

[51] Fifth Circuit Pattern Jury Instructions (rev. 2016), § 10.3.
[52] La. Civ. Code Art. 2315.

### XXII.   PLAINTIFFS' PROPOSED INSTRUCTION ON STATE TORT ASSAULT AND BATTERY:

Plaintiff Lyle Dotson claims Troopers McCartney, Anderson, and Journee committed the tort of battery against him. A battery is an intentional act. A harmful or offensive touching of a person, resulting from an act intended to cause the plaintiff to suffer such a touching is a battery. The intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent. In this lawsuit for damages, the plaintiff must prove by the weight of the evidence: (1) That the defendant committed an intentional act; (2) That the intentional act of the defendant was an actual cause of injury or damage to the plaintiff; and, (3) That the plaintiff actually sustained injury or damage. Injury or damage does not have to be bodily injury, but can include fear, humiliation, mental anguish, and/or any emotional distress.

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendants McCartney, Anderson, and/or Journee intentionally harmfully or offensively touched Plaintiff Lyle Dotson, causing Lyle injury or damage, then you must find for Plaintiff Lyle Dotson on this claim. If Plaintiff failed to make this showing as to the Defendants or any one of them, then that Defendant or Defendants are not liable for battery, and your verdict will be for any of the Defendants for whom Plaintiff did not make this showing.

### A.   Defendants' Proposed Instruction on State Law Battery:

Battery is a harmful or offensive contact with a person resulting from an act intended to cause the plaintiff to suffer such a contact, under circumstances in which the defendant has no reason to think that the plaintiff would consent to such a contact.  A bodily contact is offensive if it offends a reasonable sense of personal dignity.  Harmful contact is any physical impairment of another's body, or physical pain or illness.[53]

### B.   Defendants' Basis for Objection:

Plaintiff provides no legal citations for his proposed instruction.

### XXIII.  PLAINTIFF'S PROPOSED INTENTIONAL TORT INSTRUCTION:

Plaintiff Lyle Dotson also claims that Troopers McCartney, Anderson, and Journee committed intentional state torts against him.

The basic law in Louisiana regarding this type of suit is Article 2315 of the Louisiana Civil Code. Article 2315 states: "Every act whatsoever of man that causes damage to another obliges him by whose fault it happened to repair it." [54]

The meaning of intentional is that the Defendant either desired to bring about the physical result of his act or believed they were substantially certain to follow from what he did. It is not limited to consequences which are desired. If the defendant knew the consequences were certain or substantially certain to result from his act, and he still commits the act, he is treated by the law as if he had, in fact, desired the result. [55]

---

[53] 18 La. Civ. L. Treatise, Civil Jury Instructions, §§14.5, 14.6, 14.7.

[54] La. Civ. Code Art. 2315.

[55] Cole v. State Dep't of Pub. Safety & Corr., 2001-2123, p. 7 (La. 9/4/02), 825 So.2d 1134, 1140 (defining intent as "actor who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result").

### A.  Defendants' Basis for Objection:

No citations are provided and the instruction is unnecessary given that instructions are provided for the individual alleged torts.

### B.  Plaintiff's Basis for Instruction:

Plaintiff's offer instruction on several intentional torts, assault, battery and false imprisonment. Intent is a required element for each of these claims. Rather than re-iterate intent, Plaintiff opted to provide the intent definition in a predicate section. This definition does not deviate from Louisiana law.

### XXIV. PLAINTIFFS' PROPOSED INSTRUCTION ON STATE TORT ASSAULT AND BATTERY:

Plaintiff Lyle Dotson claims Troopers McCartney, Anderson, and Journee committed the tort of battery against him. A battery is an intentional act. A harmful or offensive touching of a person, resulting from an act intended to cause the plaintiff to suffer such a touching is a battery.[56] The intention need not be malicious nor need it be an intention to inflict actual damage.[57] It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent.[58] In this lawsuit for damages, the plaintiff must prove by the weight of the evidence: (1) That the defendant committed an intentional act; (2) That the intentional act of the defendant was an actual cause of injury or damage to the plaintiff; and, (3) That the plaintiff actually sustained injury or damage. Injury or damage does not have to be bodily injury, but can include fear, humiliation, mental anguish, and/or any emotional distress.[59]

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendants McCartney, Anderson, and/or Journee intentionally harmfully or offensively touched Plaintiff Lyle Dotson, causing Lyle injury or damage, then you must find for Plaintiff Lyle Dotson on this claim. If Plaintiff failed to make this showing as to the Defendants or any one of them, then that Defendant or Defendants are not liable for battery, and your verdict will be for any of the Defendants for whom Plaintiff did not make this showing.

### A.  Plaintiff's Basis for Proposed Instruction on State Law Battery:

Plaintiff's instruction provides jury with context for the legal elements involved in the term battery. Plaintiff's instruction is grounded in well-established Louisiana law.

---

[56] Caudle v. Betts, 512 So.2d 389, 391 (La.1987) (defining battery as, "A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . . .")

[57] Id. (stating, "It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent.")

[58] Id.

[59] Id. ("The element of personal indignity involved always has been given considerable weight. Consequently, the defendant is liable not only for contacts that do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting.")

### B. Defendants' Proposed Instruction on State Law Battery:

Battery is a harmful or offensive contact with a person resulting from an act intended to cause the plaintiff to suffer such a contact, under circumstances in which the defendant has no reason to think that the plaintiff would consent to such a contact. A bodily contact is offensive if it offends a reasonable sense of personal dignity. Harmful contact is any physical impairment of another's body, or physical pain or illness.[60]

### C. Defendants' Basis for Objection:

Plaintiff provides no legal citations for his proposed instruction.

### XXV.  JOINT INSTRUCTION ON STATE TORT FALSE ARREST:

Plaintiff Lyle Dotson claims Defendants committed a tort of false arrest against him. The tort of false arrest or false imprisonment occurs when one intentionally and unlawfully arrests or totally restrains another against his or her will. Two elements are necessary to establish the tort of false arrest: (1) involuntary detention of the person, and (2) the unlawfulness of such detention. Neither malice nor ill will is required if the detention is unlawful.

If you find that Plaintiff Lyle Dotson has proved that it is more likely than not that Defendants McCartney, Anderson, and Journee intentionally restrained Plaintiff Dotson against his will without a lawful reason then you find for Plaintiff Lyle Dotson on this claim. If Plaintiff failed to make this showing as to any of the Defendants, then Defendants McCartney, Anderson, and/or Journee are not liable for false imprisonment, and your verdict will be for any of the Defendants for whom Plaintiff did not make this showing.

### XXVI. JOINT INTRODUCTION DAMAGES INSTRUCTION:

I will now instruct you on the law of damages. The fact that I am instructing you about damages does not mean that the Court has an opinion about whether any or all of the Defendants are liable.

### XXVII.   DEFENDANTS' PROPOSED INSTRUCTION ON CONSIDERING DAMAGES ONLY IF NECESSARY:

If Plaintiff Lyle Dotson has proved any of his claims against any Defendant by a preponderance of the evidence, you must determine the damages to which Plaintiff Lyle Dotson is entitled. You should not interpret the fact that I am giving instructions about Plaintiff Lyle Dotson's damages as an indication in any way that I believe that Plaintiff Lyle Dotson should, or should not, win this case. It is your task first to decide whether any Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that any Defendant is liable and that Plaintiff Lyle Dotson is entitled to recover money from any Defendant.[61]

---

[60] 18 La. Civ. L. Treatise, Civil Jury Instructions, §§14.5, 14.6, 14.7
[61] Fifth Circuit Pattern Jury Instructions, § 15.1

### A. Plaintiff's Objection to Defendants' Proposed Instruction on Considering Damages:

Plaintiff's object to this proposed instruction as unnecessary. It does not appreciably further the jury's understanding of the substantive law and simply repeats the Court's exhortation to neutrality as previously stated in the initial jury charge.

### XXVIII.    PLAINTIFF'S PROPOSED INSTRUCTION ON COMPENSATORY DAMAGES:

If you find that Plaintiff Lyle Dotson's rights have been violated, then Lyle is entitled to be compensated for the actual damages he has suffered.  If you decide for Plaintiff Lyle Dotson on the issue of liability, you must then fix the amount of money damages which will reasonably and fairly compensate him for any harm in which Defendants' wrongful conduct was a substantial factor.

Among the elements of injury and harm you should consider are:

1.    The reasonable expense of legal services required and received by the plaintiff to defend and clear himself.
2.    The emotional and mental harm to the plaintiff Lyle Dotson during and after his imprisonment, including fear, humiliation, and mental anguish, and any emotional harm, fear, or mental anguish that plaintiff will, with reasonable certainty, suffer in the future.
3.    The harm to Plaintiff Lyle Dotson's reputation, including damage to Lyle Dotson as he seeks educational opportunities and employment in the future. [62]

### A. Plaintiff's Basis for Proposed Instruction on Compensatory Damages:

The problem of calculating damages in civil rights cases has presented challenges to attorneys and courts since the passage of 42 USC §1983. Plaintiff's proposed instruction seeks to give the jury concrete and measurable factors to consider should they reach this stage of deliberation. The proposed factors are consistent with the Supreme Court's tailoring of damages to the right violated. [63]

### B. Defendants' Proposed Instruction on Compensatory Damages:

If you find that any Defendant is liable to Plaintiff Lyle Dotson, then you must determine an amount that is fair compensation for all of Plaintiff Lyle Dotson's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make Plaintiff Lyle Dotson whole—that is, to compensate Plaintiff Lyle Dotson for the damage that he has suffered. Compensatory damages are not limited to expenses that Plaintiff Lyle Dotson may have incurred because of his injury. If Plaintiff Lyle Dotson wins, he is entitled to compensatory damages for the physical injury, pain and suffering, and mental anguish that he has suffered because of any individual Defendant's wrongful conduct.

You may award compensatory damages only for injuries that Plaintiff Lyle Dotson proves were proximately caused by a Defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiff Lyle Dotson's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries

---

[62] <u>Carey v. Piphus</u>, 435 U.S. 247, 259 (1978) (holding "the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question.")
[63] <u>Id</u>.

that Plaintiff Lyle Dotson has actually suffered or that Plaintiff Lyle Dotson is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiff Lyle Dotson prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.[64]

### C.  Defendants' Basis for Objection:

Plaintiff's proposed instruction unnecessarily deviates from the Fifth Circuit Pattern Jury Instructions and Plaintiff provides no legal citation in support of his instruction.

### XXIX. DEFENDANTS' PROPOSED INSTRUCTION ON EMOTIONAL DISTRESS DAMAGES:

To recover compensatory damages for mental and emotional distress, Plaintiff Lyle Dotson must prove that he has suffered a specific discernable injury with credible evidence. Hurt feelings, anger, and frustration are part of life and are not the types of harm that could support a mental anguish award. Evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses, but Plaintiff Lyle Dotson must support his claims with competent evidence of the nature, extent, and duration of the harm. Damages for mental or emotional distress must be based on the evidence at trial. They may not be based on speculation or sympathy.[65]

### XXX.   PLAINTIFF'S PROPOSED INSTRUCTION ON PUNITIVE DAMAGES:

You may decide whether the plaintiff is entitled to an award of punitive damages.  The function of punitive damages is to punish the defendant for malicious conduct and to deter similar conduct by others. Whether you decide to award punitive damages should be based on whether you find that the defendants acted willfully, deliberately, maliciously, or with reckless disregard of the plaintiff's constitutional rights.  If you find that the defendants have done one of those things, then you may award punitive damages.

Punitive damages may be awarded even if the violation of plaintiff's rights resulted in only nominal compensatory damages.  That is, even if the plaintiff can show no damages or other injury as a result of the defendants' actions, if these actions were deliberate, willful or made with reckless disregard of plaintiff's rights, punitive damages are appropriate. [66]

### A.  Plaintiff's Basis for Instruction:

Plaintiff's instruction contains similar substantive law to the Fifth Circuit Pattern Instruction, but Plaintiff seeks a damages formulation to assist the jury with assessing the potential availability of punitive damages specifically in a civil right context.

---

[64] Fifth Circuit Pattern Jury Instructions, § 15.2
[65] Fifth Circuit Pattern Jury Instruction, § 10.12
[66] Smith v. Wade, 461 U.S. 30 (1983); Adickes v. S.H. Kress & Co. 398 U.S. 144, 234 (1970).

### B.  Defendants' Basis for Objection:

Plaintiff fails to cite authority for the instruction and unnecessarily deviates from the Fifth Circuit Pattern Jury Instructions for Punitive Damages.

### XXXI. JOINT INSTRUCTION ON DUTY TO DELIBERATE; NOTES

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

Respectfully submitted,

*/s/ James W. Craig*
James Craig, LSBN # 33687
Emily Washington, LSBN # 34143
Roderick & Solange MacArthur Justice Center
4400 S. Carrolton Ave.
New Orleans, LA 70119
Tel. 504-620-2259
Fax 504-208-3133
jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org

- AND -

Elizabeth Cumming, LSBN #31685
316 S. Dorgenois Street
New Orleans, LA 70119
Tel. 504-822-4455
Fax 504-822-4458
elizabeth.cumming@ecumminglaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2018, I served all parties through counsel through the court's CM/ECF system.

*/s/ James W. Craig*