UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| LYLE DOTSON, ET AL., | CIVIL ACTION |
| Plaintiffs | |
| VERSUS | NO. 16-15371 |
| COL. MICHAEL EDMONSON, ET AL., | SECTION: "E" (1) |
| Defendants | |

## ORDER AND REASONS

On January 2, 2018, Defendants Calvin Anderson, Rene Bodet, Michael Edmonson, Tagee Journee, and Huey McCartney ("Defendants") filed a motion in limine to exclude certain evidence and testimony from trial.[1] Specifically, Defendants seek the exclusion of three categories of evidence and/or testimony. First, Defendants request that the Court prohibit Plaintiff Lyle Dotson from introducing testimony or evidence related to the dismissal/nolle prosequi of his criminal battery charge by the Orleans Parish District Attorney's Office.[2] Second, Defendants seek to prohibit Plaintiff from introducing testimony or evidence related to the Consent Decree entered between the New Orleans Police Department ("NOPD") and the United States Department of Justice.[3] Third, Defendants request that the Court prohibit Plaintiff from introducing testimony or evidence related to prior incidents involving the Louisiana State Police in New Orleans.[4] The motion is opposed.[5] For the reasons that follow, the motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

---

[1] R. Doc. 117.
[2] *Id*. at 2-5.
[3] *Id*. at 5-6.
[4] Id. at 6-9.
[5] R. Doc. 132.

1

A. <u>New Orleans Municipal Court Case Chronology Report</u>

On October 7, 2015, Lyle Dotson was stopped by Defendants Anderson, Bodet, Journee, and McCartney, Louisiana State Police officers, in the French Quarter of New Orleans, Louisiana.[6] The factual basis for this investigatory stop, and the events that occurred during the stop, are disputed by the parties.[7] As relevant to this motion, Plaintiff was arrested on a state charge of battery of a police officer after Defendant McCartney claimed that Plaintiff kicked him on the arm.[8] Plaintiff testified he did not kick McCartney, and asserts that Defendants had no probable cause to arrest him for battery.[9]

Plaintiff seeks to introduce a New Orleans Municipal Court Case Chronology Report as a trial exhibit.[10] The Chronology Report details the procedural history of Plaintiff's battery of police officer charge, from the initial filing of the charge with the municipal court on October 8, 2015, to the closing of the case as "Nolle Prosequied by District Attorney" on December 28, 2015.[11]

Defendants move to prohibit the introduction of the Chronology Report on relevance and hearsay grounds.[12] Defendants argue the Chronology Report is irrelevant under Rule 401[13] because, as it states no reasons for the dismissal and provides no analysis of the case on the merits, it does not make the existence of probable cause to arrest Plaintiff more or less likely. Further, Defendants assert any probative value of the Chronology Report would be outweighed by the risk of unfair prejudice or confusing the

---

[6] R. Doc. 1.
[7] *See* R. Docs. 75, 108.
[8] R. Doc. 1 at 10.
[9] *Id.*
[10] Proposed Trial Exhibit 51.
[11] *Id.*
[12] R. Doc. 117-1 at 2.
[13] FED. R. EVID. 401.

2

jury. Defendants also argue the Chronology Report is inadmissible hearsay, as Plaintiff has not identified a witness who will testify to its contents at trial.

In response, Plaintiff argues the Chronology Report is not being introduced as evidence that McCartney did not have probable cause to arrest Plaintiff, but rather as evidence of the timeline of the state criminal proceedings against Lyle, including the duration of time he was in Orleans Parish Prison before arraignment and release, and the span of time until the proceedings were ultimately resolved. Plaintiff asserts the Chronology Report is therefore relevant to the determination of the validity and amount of his claim for mental and emotional damages.

As to Defendants' hearsay objection, the Court finds the Chronology Report falls into the official records exception to the hearsay rule.[14] Rule 803(8) provides:

> (8) Public records. A record or statement of a public office if:
>   (A) it sets out:
>     (i) the office's activities;
>     (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>     (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>   (B) neither the source of information nor other circumstances indicate a lack of trustworthiness[15]

The Chronology Report is created by the Municipal Clerk's Office. According to the New Orleans Home Rule Charter, the Municipal Clerk's office has a duty to "make a filing entry into the police department computer records showing the current and final disposition of all municipal court cases."[16] The Court agrees with Plaintiff that the Chronology Report "contains unambiguous factual information mechanically recorded by

---

[14] FED. R. EVID. 803(8).
[15] *Id.*
[16] New Orleans Home Rule Charter, § 50-40.

3

Municipal staff without an interest in and without preparation for the instant civil litigation."[17] Moreover, there is no indication that the document or the circumstances of its creation demonstrate a lack of trustworthiness.[18] Accordingly, the evidence falls into the public records exception to the hearsay rule, so long as the Plaintiff provides a certified copy of the document.

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[19] The Court finds the Chronology Report is directly relevant to Plaintiff's claim for emotional and mental damages, as it establishes the timeline of events immediately following the arrest in the French Quarter, including Plaintiff's detention prior to his release, and the length of time Plaintiff had charges hanging over his head. Accordingly, the Chronology Report is relevant within the meaning of Rule 401, and is not excluded under Rule 403.[20] The Defendants will be able to address their concerns about the report through cross-examination.

B.  NOPD Consent Decree

Plaintiff seeks to introduce into evidence the Consent Decree between NOPD and the United States Department of Justice,[21] as well as NOPD policies that were developed pursuant to the Consent Decree.[22] In its motion, Defendant argues any discussion at trial of the Consent Decree or of NOPD's policies and procedures would be irrelevant since the

---

[17] R. Doc. 132 at 7.
[18] *See United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985).
[19] FED. R. EVID. 401.
[20] Because the Court finds Exhibit 51 is relevant to the issue of Plaintiff's claim for emotional and mental damages, it need not determine whether the exhibit also is relevant to Plaintiff's claim for attorneys' fees.
[21] Proposed Trial Exhibit 39.
[22] Proposed Trial Exhibit 50.

4

Defendants are Louisiana State Police officers, and are neither governed by NOPD policy nor trained according to NOPD policy. Accordingly, the exhibits "creat[e] a risk of confusing the jury into understanding that the Consent Decree has anything at all to do with LSP's operations in New Orleans or that the Defendants are bound by its provisions."[23]

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[24] Plaintiff argues the Consent Decree, and the NOPD policies developed pursuant to the Consent Decree, are relevant to Plaintiff's claims against Defendant Edmonson for § 1983 supervisory liability, as the documents provide "specific application of national best practices to New Orleans' unique demographic, geographic, and sociological features."[25] Specifically, Plaintiff, through his expert Dr. Robert Taylor, intends to use the Consent Decree and the NOPD policies to demonstrate the "gap between the policies and training offered to troopers working in the French Quarter" and the "constitutionally adequate" policies of organizations other than the Louisiana State Police.[26]

Plaintiff's arguments regarding the relevance of these exhibits with respect to Edmonson are moot, however, as the Court granted Defendants' motion for partial summary judgment based on Defendant Edmonson's qualified immunity defense.[27] The Court finds these exhibits are not relevant to the claims against the individual troopers, because these documents do not make it more or less likely that the Defendants' conduct

---

[23] *Id.*
[24] FED. R. EVID. 401.
[25] R. Doc. 132 at 8.
[26] *Id.*
[27] R. Doc. 150.

5

violated the Fourth Amendment.[28] The Consent Decree has no bearing whatsoever on the claims against Defendants Anderson, Bodet, Journee, and McCartney. The LSP is not a party to the Consent Decree, and the Consent Decree does not apply to the LSP. The Consent Decree was motivated by the Department of Justice's investigation of the NOPD, not of the LSP. Accordingly, the Consent Decree[29] is not relevant to the present matter, and will not be admitted into evidence or discussed at trial.

The Court also finds that the NOPD Policies are not relevant to the claims against the trooper Defendants. As discussed by the Court with regard to the use of LSP Policies,[30] the Plaintiff may not use police policy manuals, or an officer's failure to comply therewith, as evidence of a constitutional violation.[31] The Court finds that the policies of the NOPD would be even less relevant, and would present a serious risk of confusing the jury. NOPD Policies[32] will not be admitted into evidence or discussed at trial.

C. Other Incidents Involving the LSP in the French Quarter

Defendants seek to exclude the following evidence identified by Plaintiff: (1) a letter by the Office of Independent Police Monitor regarding the relationship between NOPD and other law enforcement agencies in Orleans Parish;[33] (2) an LSP Internal Affairs investigation into the use of force and biased-based profiling Against Sidney Newman and Ferdinand Hunt;[34] and (3) a letter from Col. Edmonson regarding the Newman/Hunt incident.[35] Defendant argues the Office of Independent Police Monitor

---

[28] *See, e.g., Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005).
[29] Proposed Trial Exhibit 39.
[30] See R. Doc. 154.
[31] *See, e.g., Tanberg*, 401 F.3d at 1163-64 ("That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant.").
[32] Proposed Trial Exhibit 50.
[33] Proposed Trial Exhibit 51.
[34] Proposed Trial Exhibit 54.
[35] Proposed Trial Exhibit 55.

6

Report, the LSP Investigation, and the letter regarding the 2013 incident should be excluded because they were untimely produced, irrelevant, and unduly prejudicial.

The Court finds that these three exhibits were untimely filed. On November 7, 2017, the Court ordered the Louisiana State Police to disclose its full set of policies to Plaintiff.[36] If either party wished to use any of these policies "or related documents" at trial, the Court allowed them to file an amended exhibit list by November 21, 2017.[37] In other words, the new exhibits permitted in the supplemental exhibit list were limited to the LSP policies disclosed to the Plaintiff pursuant to the Court's November 7, 2017 order and documents produced in relation to those policies that only became available to the Plaintiff as a result of the November 7 order. These three exhibits are not LSP policies or "related documents." Accordingly, these three exhibits were untimely filed, and will not be admitted into evidence or discussed at trial.

Furthermore, the exhibits are rendered irrelevant by the Court's ruling regarding Defendant Edmonson's claim of qualified immunity. Plaintiff's argument supporting the admissibility of these exhibits is tied solely to the supervisory liability claims against Defendant Edmonson. For example, Plaintiff argues these documents are relevant in that they "go directly to Defendant Edmonson's role in establishing a pattern and practice of unconstitutional stops and arrests,"[38] they are "indicative of his approach to allegations of unconstitutional policing," and "detail Edmonson's defense of the troopers involved in the Newman and Hunt stop."[39]

---

[36] R. Doc. 68.
[37] *Id.*
[38] R. Doc. 132 at 9.
[39] R. Doc. 132 at 10.

7

Even accepting Plaintiff's arguments that these exhibits would be relevant with regard to Defendant Edmonson, the Court finds that they are not relevant with respect to Defendants Anderson, Bodet, Journee, and McCartney. None of the remaining Defendants was involved in the 2013 incident involving Mr. Newman and Mr. Hunt, and as a result, the investigation of that incident, and Col. Edmonson's letter regarding the incident, in no way make it more or less likely that constitutional violations occurred in this case. Moreover, introducing prior incidents of unlawful conduct by other Louisiana State Police officers presents an acute risk of unfairly prejudicing the jury against the Defendants, in violation of Rule 403.

Accordingly;

**IT IS ORDERED** that Defendants' motion in limine is **GRANTED** with respect to the Consent Decree,[40] the NOPD Policies,[41] the Independent Police Monitor report,[42] the LSP Internal Affairs Investigation,[43] and the letter regarding the 2013 incident.[44]

**IT IS FURTHER ORDERED** that Defendants' motion in limine is **DENIED** with respect to New Orleans Municipal Court Case Chronology Report.[45]

**New Orleans, Louisiana, this 22nd day of January, 2018.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[40] Proposed Trial Exhibit 39.
[41] Proposed Trial Exhibit 50.
[42] Proposed Trial Exhibit 51.
[43] Proposed Trial Exhibit 54.
[44] Proposed Trial Exhibit 55.
[45] Proposed Trial Exhibit 51.