UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LYLE DOTSON, ET AL., **Plaintiffs** | CIVIL ACTION |
| VERSUS | NO. 16-15371 |
| COL. MICHAEL EDMONSON, ET AL., **Defendants** | SECTION: "E" (1) |

### ORDER AND REASONS

Plaintiffs Lyle Dotson and Olon Dotson brought an action in this Court pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth Amendment to the United States Constitution and Louisiana state law against Defendants Michael Edmonson, Donovan Archote, Huey McCartney, Calvin Anderson, Rene Bodet, and Tagee Journee.[1] After a four-day trial, the jury returned a verdict for the Defendants on all claims except one.[2] Plaintiff Lyle Dotson now moves for a new trial pursuant to Federal Rule of Civil Procedure 59.[3] Plaintiff argues the Court erred in denying Plaintiff's *Batson*[4] challenges, that the jury's responses to the verdict form are irreconcilable, and that the jury's verdict is against the great weight of the evidence.[5] Defendants oppose the motion.[6] Plaintiff filed a reply.[7]

For the reasons that follow, the motion is **GRANTED**.

---

[1] The parties stipulated to the dismissal of Donovan Archote on November 8, 2017. R. Doc. 64. On December 4, 2018, the Court granted Defendants' motion for partial summary judgment with regard to Plaintiff Olon Dotson's claims. R. Doc. 109. On January 22, 2018, the Court granted Defendants' motion for partial summary judgment as to Plaintiffs' claims against Defendant Edmonson. R. Doc. 150.
[2] R. Doc. 179.
[3] R. Doc. 185. FED. R. CIV. P. 59(a).
[4] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986).
[5] R. Doc. 185.
[6] R. Doc. 195.
[7] R. Doc. 199.

## BACKGROUND

This case involves the investigatory detention and arrest of Lyle Dotson in New Orleans, Louisiana, on October 7, 2015.[8] On that day, Dotson was touring the French Quarter with a student group led by his father, Ball State University professor Olon Dotson. After Lyle became separated from the rest of the group, he was stopped by Louisiana State Police troopers Huey McCartney, Calvin Anderson, and Tagee Journee, who suspected Lyle of surveilling undercover police officers.[9] The troopers handcuffed Lyle while they verified his driver's license, and then, after his identity was confirmed, McCartney tried to take a photograph of Lyle before releasing him. Lyle did not consent to having his photograph taken, but McCartney persisted, and Lyle became agitated.[10] In the subsequent struggle, McCartney claimed he was struck by Lyle's knee, and he arrested Lyle for battery of a police officer. Whether the alleged kick occurred, and whether it was intentional, is disputed by the parties.[11]

Lyle and Olon Dotson filed suit on October 7, 2016.[12] Lyle asserted causes of action under 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.[13] Lyle claims the troopers (1) unlawfully stopped him without reasonable suspicion; (2) used handcuffs during the investigatory stop, thereby converting the stop into unlawful arrest without probable cause; (3) exceeded the scope of the stop by continuing to detain him after his identify had been

---

[8] R. Doc. 1. For a full account of Plaintiff's allegations and the facts disputed by the parties, see *Dotson v. Edmonson*, 2018 WL 505512 (E.D. La. Jan. 22, 2018).
[9] Defendants McCartney, Anderson, and Journee were acting upon information provided by another Louisiana State Police trooper, Defendant Rene Bodet.
[10] This summary is based on the undisputed facts presented by the parties in Defendants' motion for summary judgment. *See* R. Doc. 73-3 and R. Doc. 108.
[11] *Compare* R. Doc. 75-3 at ¶42, *with* R. Doc. 108 at ¶¶ 22, 42.
[12] R. Doc. 1.
[13] R. Doc. 1. *See also* R. Doc. 112-1.

verified; (4) arrested him for battery on an officer without probable cause; and (5) used excessive force in tightly handcuffing Lyle during the walk to the police station.[14] Lyle also raised Louisiana state law claims for assault and battery and false imprisonment against the Defendant troopers.[15]

After considerable motion practice,[16] trial commenced on January 24, 2018.[17] At the conclusion of four days of testimony, the jury returned a verdict that Lyle Dotson had not proven by a preponderance of the evidence that: (1) Defendants violated Dotson's rights by stopping Dotson without reasonable suspicion; (2) Defendants Anderson or Journee violated Dotson's rights by handcuffing/seizing Dotson without probable cause; (3) Defendant Anderson, Journee, or Bodet violated Dotson's rights by continuing to detain Dotson after any reasonable suspicion had dissipated; and (4) Defendants McCartney, Anderson, or Journee violated Dotson's rights by falsely arresting Dotson for battery against an officer.[18] The jury also found for Defendants on Plaintiff's state law claims. However, the jury returned a verdict for the Plaintiff on one count, finding that Defendant McCartney violated Dotson's rights by continuing to detain Dotson after any reasonable suspicion for the stop had ended.[19] The jury further found that "no reasonable

---

[14] *See* R. Doc. 112.
[15] R. Doc. 1. R. Doc. 112-1.
[16] On January 22, 2018, the Court issued an Order and Reasons granting in part and denying in part Defendants' motion for summary judgment based on qualified immunity. R. Doc. 150. First, the Court granted Defendants' motion with respect to Dotson's § 1983 claim against Defendants McCartney, Anderson, and Journee for the use of excessive force. Second, the Court denied Defendants' motion for summary judgment with respect to Dotson's § 1983 claims against Bodet, McCartney, Anderson, and Journee for unlawful stop and unlawful arrest. Third, the Court denied Defendants' motion with respect to Plaintiff's state law claims against Bodet, McCartney, Anderson, and Journee. Lastly, the Court found that Defendant Edmonson was entitled to qualified immunity as to Plaintiff's claims against him.
[17] R. Doc. 158.
[18] R. Doc. 166.
[19] *Id.* at 5.

officer could have believed Defendant McCartney's actions were lawful."[20] The jury found that McCartney's actions were not the cause of Plaintiff's damages, however.[21]

Plaintiff now moves for a new trial pursuant to Federal Rule of Civil Procedure 59.[22] Plaintiff asserts four grounds for granting a new trial. First, Plaintiff contends the Court erred by denying Plaintiff's *Batson* challenges to Defendants' peremptory strike of Juror Marcus Henderson and Defendants' waiver of their two remaining peremptory strikes.[23] Second, Plaintiff argues the jury's verdict in favor of Defendant McCartney on the unreasonable arrest claim is irreconcilable with the jury's answers to the verdict form regarding the Plaintiff's continued detention.[24] Third, Plaintiff asserts the jury's verdict in favor of McCartney, Anderson, and Journee on the unreasonable arrest claim is contrary to the weight of the evidence.[25] Fourth, Plaintiff challenges the jury's verdict in favor of Defendants Anderson and Journee on the handcuffing claim as contrary to the weight of the evidence.[26]

## LEGAL STANDARD

A motion for new trial under Rule 59(a) is an extraordinary remedy that should be used sparingly.[27] Rule 59(a) provides, specifically, that the district court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."[28] Although Rule 59(a) does not delineate the precise grounds for granting a new trial, the Fifth Circuit has held that Rule 59(a) allows the district court to

---

[20] *Id.*
[21] *Id.*
[22] R. Doc. 185. FED. R. CIV. P. 59.
[23] R. Doc. 185 at 4-15.
[24] *Id.* at 15-20.
[25] *Id.* at 20-26.
[26] *Id.* at 26-28.
[27] *Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000) (citing *Avondale Indus., Inc. v. Bd. of Comm'rs of the Port of New Orleans*, No. 94-2786, 1996 WL 413645, at *2 (E.D. La. July 24, 1996)).
[28] FED. R. CIV. P. 59(a). *See Smith v. Transworld Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

4

grant a new trial if it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[29] Still, the decision whether to grant a new trial under Rule 59(a) is left to the sound discretion of the trial judge, and the court's authority is broad.[30]

## ANALYSIS

### I.  The *Batson* Standard

The Supreme Court held in *Batson v. Kentucky* that purposeful discrimination in the use of peremptory strikes of prospective jurors violates the Equal Protection Clause.[31] "Discrimination in jury selection . . . causes harms to the litigants, the community, and the individual jurors who are wrongfully excluded from participation in the judicial process."[32] Although *Batson* was a criminal case, the doctrine has since extended to cover jury selection in private civil litigation.[33] In considering a *Batson* challenge to a peremptory strike, a court must conduct a three-step inquiry.[34] First, the trial court must determine whether the defendant has made a prima facie showing that the striking party exercised a peremptory challenge on the basis of race.[35] Second, if the showing is made, the burden shifts to the striking party to present a race-neutral explanation for striking the juror in question.[36] "Although the [striking party] must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive,

---

[29] *See Smith*, 773, F.2d at 613 (citing *Reed Bros., Inc. v. Monsato Co.*, 525 F.2d 486, 499–50 (8th Cir. 1975)).
[30] *In re Omega Protein, Inc.*, No. 04 CV 02071, 2007 WL 1974309, at *2 (W.D. La. July 2, 2007). *See also Thomas v. Concerned Care Home Health, Inc.*, No. 13-5912, 2016 WL 930943, at *2 (E.D. La. Mar. 11, 2016).
[31] 476 U.S. 79, 106 S. Ct. 1712 (1986).
[32] *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140 (1994).
[33] *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628 (1991).
[34] *Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Batson*, 476 U.S. at 96-97).
[35] *Id.*
[36] *Id.*

5

or even plausible; so long as the reason is not inherently discriminatory, it suffices."[37] Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.[38] This final step involves evaluating the persuasiveness of the justification proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."[39] In evaluating the third step, the moving party "may rely on all relevant circumstances to raise an inference of purposeful discrimination."[40] "The critical question in determining whether the [challenging party] has proved purposeful discrimination at step three is the persuasiveness of the [striking party's] justification for his peremptory strike."[41] The ultimate question of discriminatory intent under *Batson*'s third step is a question of fact,[42] and a district court's assessment of the parties' credibility is accorded strong deference. [43]

## II. Jury Selection at Trial

The Court allowed each party three peremptory strikes during jury selection.[44] Plaintiff's counsel exercised all three strikes. Defense counsel exercised only one, striking Juror Number 8, Marcus Henderson, a 49-year-old African-American teacher.[45] Defendants waived their two remaining strikes.[46]

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Fields v. Thaler*, 588 F.3d 270, 274 (5th Cir. 2009) (quoting *Miller-El v. Dretke ("Miller-El II")*, 545 U.S. 231, 240 (2005)).
[41] *Miller-El II*, 545 U.S. at 338-39.
[42] *Hernandez v. New York*, 500 U.S. 352, 364 (1991).
[43] *See Woodward v. Epps*, 580 F.3d 318, 336 (5th Cir. 2009) ("Whether a defendant has carried his burden under *Batson*'s third step to prove purposeful discrimination is based on the persuasiveness and credibility of the prosecutor's justification for his exercise of the peremptory strike. Because of the importance of demeanor and credibility evidence in making such determinations, we give strong deference to the determination of the trial judge, consistent with AEDPA.").
[44] R. Doc. 130 at 3.
[45] R. Doc. 158 at 1. Defendants do not dispute this description of Mr. Henderson. See R. Doc. 173 at 78-80.
[46] *Id.*

Plaintiff's counsel asserted two *Batson* challenges to Defendants' use of their peremptory strikes.[47] First, Plaintiff objected to the strike of Mr. Henderson.[48] The Court, finding that Plaintiff had made a *prima facie* case, asked defense counsel to articulate a race-neutral reason for the strike. Defense counsel explained:

> He's an educational administration graduate from the University of Kentucky. As he told us, he's a teacher of English. In fact, this case involves a professor who brought his students down to New Orleans for an architectural tour. My clients were concerned that the scholastic connection would tend to make Mr. Henderson favor the plaintiff in this case over the defense. It's that simple.[49]

Plaintiff's counsel then responded:

> First of all, with respect to the concern, the witness—of course, it's not referring to Lyle Dotson, it's referring to Olon Dotson, and so we think that's exceptionally peripheral to this case as it played out. The Court granted summary judgment as to Olon Dotson.
>
> There are also other people certainly in education. Perhaps not college education, but Mr. Murphy has been a teacher for years. Ms. McKinley is starting to tutor as a teacher—as a person at Delgado Community College. And we think that this is a matter of concern. Mr. Henderson appears well qualified, and we would ask the Court to set aside the challenge.[50]

After consideration of the parties' arguments, the Court concluded:

> The cases say that when looking at whether a race-neutral reason has been articulated, the explanation has to be clear and reasonably specific. Unless its discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral. And that's *Hernandez v. New York*, 476 U.S. 352. And I think that the defendants have articulated a reasonable reason for excluding this juror, so the *Batson* challenge is denied.

Plaintiff asserted a second *Batson* challenge to Defendants' waiver of its two remaining peremptory strikes. Plaintiff argued that by failing to exercise its remaining peremptories on any other jurors, the Defendants deliberately kept Juror No. 20, Kevin

---

[47] R. Doc. 173 at 78.
[48] R. Doc. 173 at 78.
[49] *Id.* at 81.
[50] *Id.* at 81-82.

7

Arnold, an African-American male, from sitting on the jury.[51] Plaintiff contends the Defendants' waiver is therefore the "functional equivalence" of a discriminatory strike.[52]

### III. Motion for New Trial

Plaintiff asserts in his motion for a new trial that the Court erred by denying Plaintiff's *Batson* challenge to the exclusion of Mr. Henderson.[53] According to Plaintiff, the Court failed to properly conduct the third step of the *Batson* inquiry and ignored evidence of Defendants' purposeful discrimination. Specifically, Plaintiff contends Defendants' proffered reason for striking Mr. Henderson—the "scholastic connection" which might bias Mr. Henderson toward the Plaintiff—applied with equal force to two other white jurors, Heidi McKinley and Sean Murphy, whom the Defendants did not strike. Plaintiff also argues the Defendants did not ask any follow-up questions to any jurors about potential bias related to their educational background, and Defendants did not submit any questions to the Court in advance of trial asking for this topic to be included in the voir dire examination.

After reviewing the record, that portion of the trial transcript that was certified,[54] the case law, and the parties' arguments, the Court concludes that Defendants' peremptory strike of Juror Henderson evinced purposeful racial discrimination. Although at trial the Court found that Defendant had articulated "a reasonable reason" for excluding Juror Henderson, upon further consideration, the Court finds that it gave insufficient weight to the comparative juror analysis offered by the Plaintiff.[55] As a result,

---

[51] R. Doc. 173 at 78-79.
[52] *Id.* at 78.
[53] R. Doc. 185-3 at 4-15.
[54] R. Doc. 173.
[55] R. Doc. 173 at 82.

8

the Court erred in overruling Plaintiff's *Batson* challenge, and Plaintiff is entitled to a new trial.

The Fifth Circuit identifies three principles to guide a district court's comparative juror analysis.[56] First, "[i]f a [striking party]'s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."[57] "Second, if the [striking party] asserts that it was concerned about a particular characteristic but did not engage in meaningful voir dire examination on that subject, then the [striking party's] failure to question the juror on that topic is some evidence that the asserted reason was pretext for discrimination."[58] "Third, we must consider only the [striking party's] reasons for striking the black jurors and compare those reasons with its treatment of the nonblack jurors."[59] These considerations weigh in favor of the Plaintiff in this case.

First, Defendants' rationale for striking Juror Henderson—the alleged "scholastic connection"—applies with equal force to Juror McKinley and Juror Murphy, who are both white. Henderson had been a teacher in New Orleans for over 24 years, and was seeking a doctorate in educational administration.[60] His years as a teacher and his experience in higher education, which ostensibly may give rise to passive pro-academic bias, are experiences he shares with McKinley and Murphy. McKinley was working towards a master's degree in creative writing, and was soon to begin a position tutoring students at

---

[56] *Hebert v. Rogers*, 890 F.3d 213, 222 (5th Cir. 2018) (citing *Reed v. Quarterman*, 555 F.3d 364, 376 (5th Cir. 2009)).
[57] *Reed*, 555 F.3d at 376 (citing *Miller-El II*, 545 U.S. at 241).
[58] *Id.*
[59] *Id.*
[60] R. Doc. 173 at 38-39.

9

a local community college.[61] Murphy worked as a technical coordinator and computer teacher at a Catholic school.[62] Despite these qualifications, Defendants did not exercise peremptory strikes against either of these jurors.[63]

In response, Defendants' attempt to distinguish Henderson from McKinley and Murphy. Defendants argue "[n]either Jurors McKinley or Murphy has pursued a Ph.D—neither had obtained a master's degree."[64] Further, "[n]either of Jurors McKinley or Murphy taught high school students, served as vice principal in a high school, or had a spouse who was a high school principal, much less a spouse who worked in education at all."[65] The Court fails to see how these facts would sufficiently distinguish Henderson from McKinley or Murphy such that the former would present a risk of bias based on a "scholastic connection" while the latter would not. These "proffered reason[s] for striking a blank panelist appl[y] just as well to an otherwise-similar nonblack who is permitted to serve," and as a result, suggest that the asserted reason is pretext for discrimination.[66]

Second, Plaintiff correctly asserts that Defendants did not request that the Court conduct follow-up questions from potential jury members about any bias stemming from a "scholastic connection," and Defendants did not propose any voir dire questions related to the jurors' academic backgrounds. The Fifth Circuit counsels that "if the [striking party] presents a particular reason for striking a juror without engag[ing] in meaningful voir dire examination on that subject, that is some evidence that the asserted reason for the strike was pretext for discrimination."[67] In *Reed v. Quarterman*, the state struck a

---

[61] *Id.* at 38.
[62] *Id.* at 40-41.
[63] R. Doc. 158.
[64] R. Doc. 195 at 5.
[65] *Id.*
[66] *Reed*, 555 F.3d at 376.
[67] *Hebert*, 890 F.3d at 222.

10

possible juror who was African-American on the grounds that she was a health care professional and that health care workers are generally disfavored in cases involving medical evidence. However, "the prosecutor did not ask her anything about her background as a health care professional or the type of patients she saw."[68] As a result, "[t]he State's failure to question her about her job suggests that this asserted reasons for striking [the juror] was pretextual."[69]

Pretrial, Defendants did not submit any voir dire questions to the Court regarding any bias related to a possible "scholastic connection."[70] Although Defendants proposed questions about jurors' connections to the state police, spending time in the French Quarter, perceived bias in the police community generally, and the belief in the right to privacy, Defendants did not propose asking any questions about educational background.[71] At trial in this case, as in *Reed*, the Defendants failed to engage in any voir dire questioning whatsoever as to possible bias connected to academic background.[72] During the voir dire examination, after all three had disclosed their educational connections, the Court gave both parties an opportunity to submit follow-up questions of the jurors.[73] Plaintiff requested follow-up questioning on several jurors. Defense counsel did not request follow-up on any topic of any juror.[74]

The Court concedes "it does not automatically follow that absence of the questions in voir dire is indicative of pretext."[75] In *Woodward v. Epps*, the Fifth Circuit found that

---

[68] *Reed*, 555 F.3d at 377.
[69] *Id.*
[70] *See* R. Doc. 139.
[71] *Id.*
[72] *Id.*
[73] R. Doc. 173 at 68-70.
[74] *Id.* at 70.
[75] *Pucket v. Epps*, 641 F.3d 657, 665 (5th Cir. 2011).

11

the plaintiff had not established that the state's asserted reason for the peremptory strike was pretext, despite the fact that the prosecution "asked no questions" about the issue during voir dire.[76] The Fifth Circuit denied the *Batson* challenge, noting that the juror questionnaire used in that case included questions on the relevant topics. As a result, an absence of questioning from the prosecution during voir dire carried less weight.

There was no juror questionnaire in this case. The Court's voir dire examination elicited basic information about the jurors' academic backgrounds and professional lives.[77] Multiple jurors had qualities which may have given rise to the "scholastic connection," but the Defendants failed to request that the Court ask follow-up questions regarding this alleged bias. The fact that Defendants did not submit specific questions of the jurors regarding any potential academic-associated bias pre-trial, and did not request that the Court ask any follow-up questions about any bias related to Olon Dotson's academic career during voir dire, suggests more strongly in this case than in *Woodward* that the Defendants' proffered reason is pretextual.

Lastly, Defendants' proffered reason for striking Henderson is only marginally relevant to the issues presented in the case. As Plaintiff noted during jury selection, the Court granted Defendants' motion for summary judgment as to Olon Dotson's claims.[78] As a result, Olon Dotson was a witness and not a party.[79]

"The critical question in determining whether the [challenging party] has proved purposeful discrimination at step three is the persuasiveness of the [striking party's] justification for his peremptory strike."[80] Upon further consideration, the Court

---

[76] 580 F.3d 318, 340 (5th Cir. 2009).
[77] R. Doc. 173 at 35-68.
[78] R. Doc. 109.
[79] R. Doc. 173 at 81.
[80] *Miller-El II*, 545 U.S. at 338-39.

concludes that Defendants' justification for striking Henderson is simply not persuasive. Considering "all relevant circumstances,"[81] the Court finds Plaintiff has met his burden of proving the Defendants' proffered reason for exercising a peremptory strike against Henderson was pretext for unlawfully striking him based on his race.[82] As a result, the Court's ruling at trial overruling Plaintiff's *Batson* challenge was in error, and Plaintiff is entitled to a new trial.

Accordingly;

**IT IS ORDERED** that Plaintiff's motion for a new trial[83] is hereby **GRANTED**.[84]

**New Orleans, Louisiana, this 15th day of June, 2018.**

*/s/ Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[81] *Hernandez*, 500 U.S. at 363.
[82] As Plaintiff's motion for new trial is granted on the *Batson* challenge to Mr. Henderson, the Court need not address either the second *Batson* challenge or the other arguments in favor of a new trial.
[83] R. Doc. 183.
[84] As Plaintiff is entitled to a new trial, Plaintiff's motion for attorneys' fees, R. Doc. 182, and Defendant Huey McCartney's motion for judgment as a matter of law, R. Doc. 184, are denied as moot.