UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LYLE DOTSON, ET AL.<br><br>Plaintiffs,<br><br>VERSUS<br><br>MICHAEL EDMONSON, COL. ET AL.<br><br>Defendants. | 16-CV-15371<br><br><br><br>JUDGE SUSIE MORGAN<br><br>MAGISTRATE JUDGE<br>JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court is the Motion to Modify Protective Order filed by plaintiff Lyle Dotson. (Rec. Doc. 213). For the following reasons, the Motion is GRANTED.

Background

Plaintiff Lyle Dotson filed this lawsuit in October 2016 alleging he had been wrongfully arrested by the certain Louisiana State Police ("LSP") officers in the French Quarter in New Orleans on October 7, 2015. He sued the officers involved in their individual capacities. During the course of discovery, the Louisiana State Police ("LSP") produced its entire Policies and Procedures Manual (the "Polices"). LSP had objected to doing so, arguing that only a limited number of policies (that had been produced) were relevant to Dotson's claims. LSP also expressed concern that the same attorneys that represent Dotson also represent other plaintiffs in four other lawsuits against the LSP and that the attorneys sought to use the Policies in that other litigation. LSP further argued that producing all the Policies could result in disclosure of confidential and sensitive information regarding law enforcement tactics that if released to the public, could compromise LSP investigations and the safety of LSP personnel. The undersigned denied Dotson's

1

motion to compel, finding that the Policies as a whole were not discoverable. Dotson appealed to the District Court.

At a status conference held in the chambers of the District Judge on November 7, 2017, the District Court granted the appeal, ordered LSP to produce all the Policies, and required the parties to file a joint motion for protective order. (Rec. Doc. 68). That same day, Dotson filed a motion for entry of a protective order, reporting that LSP had reviewed the proposed order and stated it had no objection to it. (Rec. Doc. 62, at 2). The proposed order (the "Protective Order") was entered by the undersigned on November 9, 2017.

The Protective Order defines "Confidential Information" as "particularized information which implicates individual privacy rights, specifically information included in radio logs, call logs, and desk logs regarding home addresses, telephone numbers, social security numbers, and driver's license numbers of arrested people" as well as "information implicating the privacy concerns protected by law, statute, or regulation with respect to individuals or that the Designating Party reasonably believes possesses sufficient commercial or privacy interest and is not public record." (Rec. Doc. 66, at 1-2). The Protective Order limits the individuals to whom Confidential Information can be disclosed, and it requires that Confidential Information shall be used solely for the purpose of this specific action and not for any other purpose. Id. at 2-3. It provides that Confidential Information remains Confidential Information unless the parties stipulate otherwise or "there is a finding by this Court that the information is not the proper subject of protection under the terms of this Stipulated Protective Order and/or appropriate provisions of Louisiana and United States law." Id. at 3. With regard to challenges to the designation of confidential information, the Protective Order provides that "[e]ach party reserves the right to challenge the Defendants' designation of any particular piece of information as 'Confidential Information' through filing a

motion with the Court." Id.   The Protective Order also provides that "[e]ach party reserves the right to move to modify the terms of this Protective Order at any time." Id.

Following the District Court's minute entry ordering that the Policies be produced, the District Court issued a written order and reasons on November 21, 2017. (Rec. Doc. 81). Therein, the District Court concluded that the LSP had failed to show that the Policies were irrelevant and that, therefore, the Policies were discoverable. (Rec. Doc. 81). The District Court also addressed the LSP's confidentiality concerns and found that they would be "allayed by the Court's entry of a protective order." Id. at 7. The court explained that:

> This order will safeguard against the public disclosure of LSP's documents by limiting viewing of the Policies and Procedures to counsel of record in this action and their regular employees, the parties, expert witnesses, and court officials. The subpoenaed documents may not be used in any other action. The Court takes seriously the protection of public servants and law enforcement officers, and will closely monitor the parties' compliance with the protective order.

Id. at 7-8.

The matter went to trial before a jury in January 2018. In the lead up to the trial, the District Judge found that Dotson's claims against Officer Edmonson were barred by the doctrine of qualified immunity, and held that the Policies were not relevant to Dotson's claims against Officers Anderson, Bodet, Journee, and McCartney. (Rec. Doc. 152). Dotson also had filed a motion in limine challenging the confidentiality of documents produced by the LSP under the terms of the protective order. (Rec. Doc. 119). Among other things, Dotson argued that the Policies were relevant to his case, that he intended to use all or some of them as trial exhibits, and that the public right of access to the trial exhibits outweighed the LSP's interest in confidentiality. Id. at 8. The District Court found that the remaining Policies that Dotson sought to introduce were irrelevant and inadmissible. (Rec. Doc. 154, at 2-3). The District Court noted that "[w]ith respect to the broader public disclosure of documents currently under protective order outside the confines of

3

this case, the Court will provide an opportunity for the parties and the Louisiana State Police to brief this issue after the trial concludes." Id. at 3.

At trial, the jury found that Dotson had not established a claim for an unreasonable stop, an unreasonable seizure, or a false arrest for battery of an officer under the Fourth Amendment. (Rec. Doc. 165). The jury found that Officer McCartney had violated Dotson's Fourth Amendment rights by continuing to detain him after any reasonable suspicion for the stop had dissipated. Id. However, the jury found that McCartney had not caused any of Dotson's alleged damages. Id. The jury found that the remaining defendant officers had not violated Dotson's Fourth Amendment rights by continuing to detain him after any reasonable suspicion for the stop had dissipated. Id. The jury also found that Dotson had not established a claim for battery or a claim for false imprisonment under Louisiana law. Id. No damages were awarded. Id. Thereafter, Dotson filed a Motion for Entry of Judgment for Nominal Damages. (Rec. Doc. 172). The District Court granted the motion and awarded Dotson $1,000. (Rec. Doc. 178). Dotson then filed a Motion for Attorneys Fees. (Rec. Doc. 182). McCartney filed a Renewed Motion for Judgment as a Matter of Law. (Rec. Doc. 184). And Dotson filed a Motion for New Trial, arguing that the District Court had erred in denying his Batson challenges. (Rec. Doc. 185). The Motion for New Trial was granted on June 15, 2018. (Rec. Doc. 200). Defendants filed a Motion for Reconsideration of that order. (Rec. Doc. 201). Prior to a ruling on that motion, the parties then participated in a settlement conference and settled all claims. (Rec. Doc. 211). The action was dismissed on August 13, 2018. (Rec. Doc. 212).

Although the LSP was not a party to the lawsuit, in the Release and Indemnity agreement executed by Dotson, Dotson released the officers as well as the LSP, the State of Louisiana, and the Louisiana Department of Public Safety:

> from any and all claims, demands, and causes of action of whatsoever kind or nature, whether known or unknown, for or because of any matter or thing done,

>omitted, or suffered to be done by any of the Released Parties, at any time prior to and up to and including the date [of the release] . . . ."

(Rec. Doc. 215-1, at 1). Dotson recognized that the settlement was "intended to terminate further controversy respecting all causes of action and claims of damages of whatsoever kind of nature that I have heretofore asserted, might have asserted, or might hereinafter assert because of the Lawsuit and the events described therein." Id. at 3.

Motion to Modify the Protective Order

On January 31, 2019, Dotson filed the present Motion to Modify the Protective Order. Dotson points out that some of the Policies[1] are already in the record of these proceedings as exhibits to his supplemental opposition to Defendants' Motion for Summary Judgment. Those Policies were not filed under seal. Dotson argues that all the Policies should be removed from the confidentiality provisions of the Protective Order. He submits that the LSP has never articulated any reason why the Policies justify a confidentiality designation beyond a vague suggestion of security concerns. Dotson argues that the Policies are of significant import to the public interest and that there is no law enforcement privilege that protects them from disclosure.

Dotson further argues that federal common law presumes a public right to access of judicial records that favors removing the confidentiality designation. He argues the Policies are public records under Louisiana's public record law and that maintaining documents confidentially when they would be subject to disclosure under the public record law is inconsistent with that law's presumption in favor of public access. Dotson submits that removing the confidential designation from the Policies will facilitate increased transparency and review of the training and Policies of a "troubled organization." He argues that federal common law recognizes the incentive to remove protective order restrictions from documents likely to be used in other litigation. He submits that

---

[1] Specifically, policies 203, 205, 238, 502, 601, 604, 901, 903, 1105, 1106, and 1112.

not only might the Policies facilitate discovery in other (unspecified) litigation, but it may also be used to create an informed public discourse regarding the patrolling policies and procedures of the LSP.

LSP opposes, arguing first that by entering into the Release and Indemnity Agreement, Dotson waived any claim to modify the Protective Order. Next, LSP argues that the issue of whether the Policies are a public record under Louisiana's public records law should not be made in a closed case where the Policies were neither relevant to the proceeding nor admitted into evidence.

Law and Analysis

1. *Protective Orders*

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." Harris v. Amoco Prod. Co., 768 F.2d 669, 683–84 (5th Cir. 1985). "If the party from whom discovery is sought shows "good cause," the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained." Id. at 684. Indeed, Federal Rules of Civil Procedure 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, issuing an order "forbidding the disclosure or discovery" or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. Proc. 26(c)(1). "The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)

*2. Modification of Protective Orders*

The Protective order at issue here can be described as a blanket protective order, which requires "the parties to designate as protected that information that each side reasonably believes to be particularly sensitive." Raytheon Co. v. Indigo Sys. Corp., No. 4:07-CV-109, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008); Donahue v. Smith, No. CV 15-6036, 2017 WL 6604842, at *3 (E.D. La. Dec. 27, 2017). Such blanket protective orders are commonly used in discovery. See S.E.C. v. TheStreet.Com, 273 F.3d 222, 230 n.7 (2d Cir. 2001); Raytheon, 2008 WL 4371679. As the Second Circuit Court of Appeals explained in TheStreet.com,

> protective orders issued under Rule 26(c) serve "the vital function ... of 'secur[ing] the just, speedy, and inexpensive determination' of civil disputes ... by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice." Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless "annoyance, embarrassment, oppression, or undue burden or expense." And if previously-entered protective orders have no presumptive entitlement to remain in force, parties would resort less often to the judicial system for fear that such orders would be readily set aside in the future.

Id. (quoting Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 295 (2d Cir. 1979)).

Nonetheless, it is undisputed that a court "retains the authority to modify or lift confidentiality orders that it previously entered." Holland v. Summit Autonomous, Inc., No. CIV. A. 00-2313, 2001 WL 930879, at *2 (E.D. La. Aug. 14, 2001), aff'd sub nom. Holland v. Summit Tech., Inc., No. CIV. A. 00-2313, 2001 WL 1132030 (E.D. La. Sept. 21, 2001); Riverkeeper v. Taylor Energy Co., LLC, 309 F.R.D. 381, 387 (E.D. La. 2015) ("The Court notes that it retains the authority to modify or lift confidentiality orders that it previously entered, which includes the Protective Order at issue."). Courts consider the following factors in determining whether to modify a protective order: "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and

7

most significantly (4) whether good cause exists for the modification." Schafer v. State Farm & Fire Cas. Co., No. CIV.A. 06-8262, 2009 WL 650263, at *2 (E.D. La. Mar. 11, 2009) (quoting Murata Mfg. Co. v. Bel Fuse, Inc., 234 F.R.D. 175, 179 (N.D. Ill. 2006)).

In considering the nature of the protective order, courts have held that although blanket protective orders are more susceptible to modification than narrowly drawn protective orders, where the parties have stipulated to the terms of the order, this weighs against modification. Petrobras Am. Inc. v. Vicinay Cadenas, S.A., No. 4:12-CV-00888, 2015 WL 12940017, at *1 (S.D. Tex. Dec. 18, 2015); see Donahue, 2017 WL 6604842, at *4 ("Because the Protective Order is not the product of the parties' joint stipulation, this factor weighs in favor of modification."). As to foreseeability, if at the time they negotiated the original protective order, the parties could have foreseen the exigency giving rise to the present request to modify, the foreseeability factor weighs against modification because it is a point that could have been incorporated into the original order and the party seeking modification "should not now be allowed to dramatically and unilaterally reposition that balance at this stage in the litigation." Raytheon, 2008 WL 4371679, at *2. "The reliance factor focuses on the extent to which the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery." Id. at *3. In considering the good cause factor, "if good cause was shown for the original protective order, the burden is on the party seeking modification to show good cause for modification; if good cause was not shown for the original protective order, the burden of showing good cause is on the party seeking continued confidentiality protection." Holland, 2001 WL 930879, at *2 (quoting Bayer AG & Miles, Inc. v. Barr Labs., Inc., 162 F.R.D. 456, 462 (S.D.N.Y. 1995)).

As Dotson points out here, the Fifth Circuit Court of Appeals has recognized that "protective orders should generally be modified to allow discovery in other actions." Stack v. Gamill, 796 F.2d 65, 68 (5th Cir. 1986).

> Where access is requested to material covered by a protective order for use in other litigation, the court is confronted with a choice between two concerns grounded in Rule 1. One is that protective orders facilitate the speedy and inexpensive disposition of litigation by avoiding discovery disputes. A second is that requiring litigants to re-do discovery conflicts is wasteful and delays litigation.

Schafer v. State Farm & Fire Cas. Co., No. CIV.A. 06-8262, 2009 WL 650263, at *2 (E.D. La. Mar. 11, 2009) (quoting § 2044.1Modification of Protective Orders, 8A Fed. Prac. & Proc. Civ. § 2044.1 (3d ed.)). In Schafer, for example, the magistrate judge modified a protective order that had been stipulated to by the parties where the plaintiffs sought to use documents designated confidential in future litigation against the defendant. Id. at *1. The magistrate judge ordered that:

> If the plaintiffs are desirous of using documents produced in this case in other State Farm cases, they are first to provide defendants with reasonable notice of their intent to do so (notice via letter will suffice). If the parties are thereafter unable to agree on such use of the documents, plaintiffs are to move the judge(s) presiding over those other State Farm cases to determine the documents' relevancy in those proceedings. The terms of the protective order entered in this case shall remain in effect throughout this process.

Id. The defendants appealed the ruling to the district judge, who affirmed, finding the order properly moderated because it provided a method by which only the plaintiffs could seek to use the information in other litigation, and did not allow third parties to access the information. Id. at *3. Although the other litigation was not yet pending, the court rejected the defendants' argument that modification of the protective order was speculative. Id. The court noted that the other forum where the future litigation is pending would be the in the best position to decide whether the materials were relevant to the litigation. Id.

  3. *Law Enforcement Privilege*

9

The LSP did not address Dotson's first argument that the federal law enforcement privilege does not provide a basis to limit disclosure of the Policies. Indeed, not only is the law enforcement privilege qualified, it is limited to investigative files in ongoing criminal investigations. United States v. Charles, No. CRIM. 08-0011, 2008 WL 5172587, at *2 (W.D. La. Dec. 9, 2008). There appears to be no dispute, then, that the Policies are not protected by a federal law enforcement privilege.

4. *Louisiana Public Records Law*

Dotson concedes that the potential scope of any privilege over the Policies is a matter of federal common law, but he points out that federal courts have considered Louisiana's public records law in determining whether documents are properly designated confidential pursuant to a protective order. For example, in Bynum v. W. Baton Rouge Par. Sch. Sys., the defendant state agency moved to have all records in plaintiffs' personnel files subject to a protective order and, if filed with the court, filed under seal. No. CIV.A 09-776-RET-SCR, 2010 WL 1533306, at *1 (M.D. La. Apr. 15, 2010). The court concluded that the defendant had "not shown good cause, or even offered a good reason, to expand confidentiality beyond what is required by R.S. 44.11," Louisiana's public records law regarding the confidentiality of personnel records. Id. Noting that the plaintiffs had agreed to maintain the confidentiality of medical records, bank account information, telephone numbers, addresses and social security numbers, the court denied defendant's request for a protective order. Id. at *1-2.

Here, Dotson argues that the Policies are public records under Louisiana law. The public's right of access to government records is guaranteed by the Louisiana Constitution and has been described as a "fundamental right" that must be construed "in favor of the public's right to see."

Title Research Corp. v. Rausch, 450 So. 2d 933, 936 (La. 1984). Louisiana's statutory scheme, the Public Records Law, provides that all records:

> having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body

are "public records" except as otherwise provided by Louisiana's Public Records Law or the Constitution of Louisiana. La. Rev. Stat. § 44:1. Under the Public Records Law, the following records are not required to be disclosed:

> Records containing security procedures, investigative training information or aids, investigative techniques, investigative technical equipment or instructions on the use thereof, criminal intelligence information pertaining to terrorist-related activity, or threat or vulnerability assessments collected or obtained in the prevention of terrorist-related activity, including but not limited to physical security information, proprietary information, operational plans, and the analysis of such information, or internal security information.

Id. § 44:3. Dotson cites United States v. Guevara-Miranda, where a district court in the Western District of Louisiana denied a motion to quash subpoena issued to the LSP by the defendant in a criminal action. No. CRIM. 14-0164, 2014 WL 7157384, at *3 (W.D. La. Dec. 15, 2014). The subpoena sought LSP policies and procedures governing the use of video and audio recording equipment and governing the use of personal cell phones by officers on duty. Id. at *1. The court found the policies were relevant and rejected the government's suggestion that the policies could not be produced because La. Rev. Stat. § 44:3 prohibits disclosure of security procedures and information pertaining to terrorist-related activity. Id. at *2. The court concluded that the policies sought by the defendant did not pertain to terrorist activities, found the LSP had been able to produce excerpts from its manual in another case, and held the government had not established a credible reason why the LSP could not do so. Id.

The LSP argues that the Court should not consider whether the Policies are public records under Louisiana law because Louisiana's Public Records Law provides a procedure by which a person can obtain public records and, where the state resists disclosure, a procedure by which the person can appeal the withholding of purported public records. The LSP distinguishes Guevara-Miranda, pointing out that the case involved a federal criminal proceeding and not a request that the documents be declared public records.

The LSP misses the point. Dotson does not seek a declaration by this court that the Policies are public records under Louisiana law. He merely argues that ultimately the Policies would be considered public records and that this weighs in favor of removing the confidentiality designations here. Nonetheless, whether the Policies amount to a public record is not an issue this Court is in a position to decide. Contrary to Dotson's suggestion, the exceptions provided for in §44:3 are not limited to policies concerning "terrorist activities." That subject matter limits only the 5th and 6th clauses of the subsection ("criminal intelligence information" and "threat or vulnerability assessments"). Without a "terrorist-related activity" modifier, the subsection also excepts from disclosure those records containing "security procedures, investigative training information or aids, investigative techniques, [and] investigative technical equipment or instructions on the use thereof." While it would not be surprising if some such materials are contained in the Policies, the LSP has failed to explain which policies are implicated by these subsections and why. Thus, the court cannot now conclude that the exception applies to the Policies as a whole. By default, of course, the Policies are public records. However, the court does not now rule that all of the Policies are public records. As discussed below, the Policies are not properly designated confidential pursuant to the terms of the Protective Order, and thus the court need not

decide whether they are public records at this time. The issue of whether some of the Policies are entitled to some other protection will be deferred.

5. *Analysis of the Protective Order*

Dotson (and presumably his attorneys) seek to have the Policies removed from the limitations on disclosure required by the protective order so he can use them in other litigation against the LSP and more generally, to inform the public discourse regarding the patrolling policies of the LSP. While Dotson has styled his motion as a motion to modify the Protective Order, the Protective Order actually contemplates a dispute between the parties as to whether information is properly designated confidential and requires that if the parties cannot resolve the issue between themselves, the information remains confidential until "there is a finding by this Court that the information is not the proper subject of protection under the terms of this Stipulated Protective Order and/or appropriate provisions of Louisiana and United States law." It is that provision of the Protective Order that is applicable to Dotson's request.

The Protective Order defines "Confidential Information" as "particularized information which implicates individual privacy rights, specifically information included in radio logs, call logs, and desk logs regarding home addresses, telephone numbers, social security numbers, and driver's license numbers of arrested people" as well as "information implicating the privacy concerns protected by law, statute, or regulation with respect to individuals or that the Designating Party reasonably believes possesses sufficient commercial or privacy interest and is not public record." LSP does not clearly articulate how the Policies fit into one of the categories contemplated by the Protective Order. The Policies do not implicate the specifically listed examples of information implicating individual privacy rights. The Policies do not appear to implicate privacy concerns with respect to individuals. The Policies do not appear to possess a commercial interest.

Nor do they appear to implicate a privacy interest. Importantly, although LSP did not stipulate to entry of the Protective Order, LSP did not oppose its entry. Had LSP wanted the definition of confidentiality to apply to the Policies, it could have opposed the motion and proposed alternative language. The Protective Order was entered after motion practice before both the undersigned and the district judge regarding discoverability of the Policies. The parties already knew the issues. In fact, in light of that, the limited definition of confidential information, a definition that does not implicate the public safety concerns raised by the LSP, is curious. Under the terms of the Protective Order, the court finds that the Polices are not properly designated as "confidential."

Because the court has found that the Policies are not within the scope of "confidentiality" as defined by the Protective Order, the court must remove them from the confidentiality protections of the Protective Order. However, just as the district court noted in November 2017, the court "takes seriously the protection of public servants and law enforcement officers." Accordingly, the court holds that its present ruling does not prevent the LSP from seeking a protective order to protect from public disclosure any of the Policies that it contends implicate a public safety concern. The effect of this court's order that the Policies be removed from the confidentiality designation of the Protective Order shall be stayed for a period of 21 days, during which time LSP may file a motion for protective order if it can show good cause why certain Policies should be protected from public disclosure. The filing of such motion shall further stay the effect of this ruling as to the Policies addressed by the motion for protective order, until such time as the court resolves the motion. If no motion for protective order is filed by June 14, 2019, then Dotson shall be allowed to use and disclose the Policies without limitation of the Protective Order as of the next day.

Conclusion

For the forgoing reasons, the Motion to Modify Protective Order filed (Rec. Doc. 213) is GRANTED and Dotson shall be allowed to use and disclose the Policies without the limitations on confidential documents required by the Protective Order;  provided that this Order shall be stayed as described above.

New Orleans, Louisiana, this 24th day of May, 2019.

                                                    Janis van Meerveld
                                       United States Magistrate Judge