UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LYLE DOTSON, ET AL. | 16-CV-15371 |
| Plaintiffs, | |
| VERSUS | JUDGE SUSIE MORGAN |
| MICHAEL EDMONSON, COL., ET AL. | MAGISTRATE JUDGE |
| Defendants. | JANIS VAN MEERVELD |

ORDER AND REASONS

Before the Court is the Motion for Protective Order filed by non-party the Louisiana State Police ("LSP"). (Rec. Doc. 218).   For the following reasons, the Motion is GRANTED in part and DENIED in part, as provided herein.

Background

Plaintiff Lyle Dotson filed this lawsuit in October 2016 alleging he had been wrongfully arrested by certain Louisiana State Police ("LSP") officers in the French Quarter in New Orleans on October 7, 2015. He sued the officers involved in their individual capacities. During the course of discovery, LSP produced its entire Policies and Procedures Manual (the "Polices"). LSP had objected to doing so, arguing that only a limited number of policies (that had been produced) were relevant to Dotson's claims. LSP also expressed concern that the same attorneys that represent Dotson also represent other plaintiffs in four other lawsuits against LSP and that the attorneys sought to use the Policies in that other litigation. LSP further argued that producing all the Policies could result in disclosure of confidential and sensitive information regarding law enforcement tactics that if released to the public, could compromise LSP investigations and the safety of LSP personnel. The undersigned denied Dotson's motion to compel, finding that the Policies as a whole were not discoverable. Dotson appealed to the District Court.

1

At a status conference held in the chambers of the District Judge on November 7, 2017, the District Court granted the appeal, ordered LSP to produce all the Policies, and required the parties to file a joint motion for protective order. (Rec. Doc. 68). That same day, Dotson filed a motion for entry of a protective order, reporting that LSP had reviewed the proposed order and stated it had no objection to it. (Rec. Doc. 62, at 2). The proposed order (the "Protective Order") was entered by the undersigned on November 9, 2017. It provides for the designation of information as "Confidential Information," limits the individuals to whom Confidential Information can be disclosed, and requires that Confidential Information shall be used solely for the purpose of this specific action and not for any other purpose. Id. at 2-3. It appears that LSP then produced the Policies subject to the Protective Order.

Following the District Court's minute entry ordering that the Policies be produced, the District Court issued a written order and reasons on November 21, 2017. (Rec. Doc. 81). Therein, the District Court concluded that LSP had failed to show that the Policies were irrelevant and that, therefore, Policies were discoverable. Id. The District Court also addressed LSP's confidentiality concerns and found that they would be "allayed by the Court's entry of a protective order." Id. at 7. The court explained that:

> This order will safeguard against the public disclosure of LSP's documents by limiting viewing of the Policies and Procedures to counsel of record in this action and their regular employees, the parties, expert witnesses, and court officials. The subpoenaed documents may not be used in any other action. The Court takes seriously the protection of public servants and law enforcement officers, and will closely monitor the parties' compliance with the protective order.

Id. at 7-8.

The matter went to trial before a jury in January 2018. In the lead up to the trial, the District Judge found that Dotson's claims against Officer Edmonson were barred by the doctrine of qualified immunity and held that the Polices were not relevant to Dotson's claims against Officers

2

Anderson, Bodet, Journee, and McCartney. (Rec. Doc. 150). Dotson had also filed a motion in limine challenging the confidentiality of documents produced by LSP under the terms of the Protective Order. (Rec. Doc. 119). Among other things, Dotson argued that the Policies were relevant to his case, that he intended to use all or some of them as trial exhibits, and that the public right of access to the trial exhibits outweighed LSP's interest in confidentiality. Id. at 8. The District Court found that the remaining Policies that Dotson sought to introduce were irrelevant and inadmissible. (Rec. Doc. 154, at 2-3). The District Court noted that "[w]ith respect to the broader public disclosure of documents currently under protective order outside the confines of this case, the Court will provide an opportunity for the parties and the Louisiana State Police to brief this issue after the trial concludes." Id. at 3.

At trial, the jury found that Dotson had not established a claim for an unreasonable stop, an unreasonable seizure, or a false arrest for battery of an officer under the Fourth Amendment. (Rec. Doc. 165). The jury found that Officer McCartney had violated Dotson's Fourth Amendment rights by continuing to detain him after any reasonable suspicion for the stop had dissipated. Id. However, the jury found that McCartney had not caused any of Dotson's alleged damages. Id. The jury found that the remaining defendant officers had not violated Dotson's Fourth Amendment rights by continuing to detain him after any reasonable suspicion for the stop had dissipated. Id. The jury also found that Dotson had not established a claim for battery or a claim for false imprisonment under Louisiana law. Id. No damages were awarded. Id. Thereafter, Dotson filed a Motion for Entry of Judgment for Nominal Damages. (Rec. Doc. 172). The District Court granted the motion and awarded Dotson $1,000. (Rec. Doc. 178). Dotson then filed a Motion for Attorneys Fees. (Rec. Doc. 182). McCartney filed a Renewed Motion for Judgment as a Matter of Law. (Rec. Doc. 184). And Dotson filed a Motion for New Trial, arguing that the District Court had erred in

denying his <u>Batson</u> challenges. (Rec. Doc. 185). The Motion for New Trial was granted on June 15, 2018. (Rec. Doc. 200). Defendants filed a Motion for Reconsideration of that order. (Rec. Doc. 201). Prior to a ruling on that motion, the parties participated in a settlement conference and settled all claims. (Rec. Doc. 211). The action was dismissed on August 13, 2018. (Rec. Doc. 212).

On January 31, 2019, Dotson filed a Motion to Modify the Protective Order, arguing that the Policies should be removed from the confidentiality provisions of the Protective Order. The undersigned granted Dotson's motion, finding that the limited definition of the Confidential Information in the Protective Order did not extend to the Policies. However, the court ordered that LSP was permitted to seek a protective order to protect specific Policies from public disclosure and that the Policies would remain protected by the Protective Order until LSP's motion was resolved.

LSP filed the present motion seeking to subject portions of 11 of the Policies to a protective order limiting their public disclosure. LSP points out that its request implicates only 49 pages of the 395-page document. It argues that disclosure of these policies implicates public safety concerns. It also argues that the policies are exempt from disclosure under the Louisiana Public Records Law. Dotson opposes on several grounds. He argues that there is a strong presumption of public access to documents produced in discovery after the case is closed. He further argues that LSP has waived any right to claim confidentiality as to P.O. 238 (Use of Force), P.O. 604 (Special Weapons and Tactics), P.O. 1105 (Criminal Patrols), and P.O. 1112 (Pursuit/Roadblock) because these documents were filed into the record as attachments to Dotson's Supplemental Response in Opposition to Defendant's Motion for Summary Judgment. They were not filed under seal and LSP did not object. Dotson adds that the fact that these policies have been in the public record without any adverse effects on public safety demonstrates that the release of the policies would

4

not put the public at risk of harm. Finally, Dotson addresses each of the policies and explains his argument for why the purported presumption in favor of public access outweighs any interest of public safety.

Law and Analysis

1. *Protective Orders*

"A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." Harris v. Amoco Prod. Co., 768 F.2d 669, 683–84 (5th Cir. 1985). "If the party from whom discovery is sought shows 'good cause,' the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict what materials are obtainable, how they can be obtained, and what use can be made of them once obtained." Id. at 684. Indeed, Federal Rules of Civil Procedure 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, issuing an order "forbidding the disclosure or discovery" or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. Proc. 26(c)(1). "The burden is upon the movant to show the necessity of [a protective order's] issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

2. *Public Access and Right to Disseminate Court Records and Discovery Materials*

Dotson insists that there is a strong presumption in favor of the public's right to access judicial records. Indeed, the United States Supreme Court has recognized the public's right to

"inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978). Although this rule "establishes a presumption of public access to judicial records," the public's right of access is not absolute. S.E.C. v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir. 1993). "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." Id. The Fifth Circuit has explained that the presumption does not equate to a burden of proof and that a court's decision to seal or unseal records must be made on a case by case basis. Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr., 913 F.3d 443, 450 (5th Cir. 2019).

Many of the records at issue here, however, were never introduced at trial or otherwise filed into the public record and, therefore, are not subject to the same presumption. See In re Reporters Comm. for Freedom of the Press, 773 F.2d 1325, 1337 (D.C. Cir. 1985) (Scalia, J.) (distinguishing between pre-trial materials and materials introduced at trial for purposes of determining whether the non-party reporters were entitled to access the materials); see also Bond v. Utreras, 585 F.3d 1061, 1073 (7th Cir. 2009) ("[W]hile the public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding, or otherwise constitute 'judicial records,' the same is not true of materials produced during discovery but not filed with the court"). Indeed, the "presumption reflects the fact that '[p]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.'" Vantage, 913 F.3d at 450 (quoting United States v. Holy Land Found. For Relief & Dev., 624 F.3d 685, 690 (5th Cir. 2010) (alterations in original)). Pretrial discovery, on the other hand, is not a public component of a civil trial. Bond, 585 F.3d at

6

1074-75. As the court in <u>Bond</u> observed, the fact "[t]hat the court's discovery processes and rules are used to require litigants to produce otherwise private information to an opposing party is not enough to alter the legal rights of the general public." <u>Id.</u> at 1075.

The law on this point has evolved. In 1980, Judge Wisdom, sitting by designation with the Seventh Circuit Court of Appeals, held that "(a)s a general proposition, pretrial discovery must take place in the (sic) public unless compelling reasons exist for denying the public access to the proceedings."[1] <u>Wilk v. Am. Med. Ass'n</u>, 635 F.2d 1295, 1299 (7th Cir. 1980) (quoting <u>Am. Tel. & Tel. Co. v. Grady</u>, 594 F.2d 594, 596 (7th Cir. 1978)) (alterations in original). This opinion was cited favorably by the Fifth Circuit in 1986 when the court of appeals ordered a protective order be modified to join a non-party so that the non-party would not be barred from making discovery requests in pending state court litigation, but could instead do so pursuant to the terms of the protective order. <u>Superior Oil Co. v. Am. Petrofina Co. of Tex.</u>, 785 F.2d 130, 130 (5th Cir. 1986); <u>see Stack v. Gamill</u>, 796 F.2d 65, 68 (5th Cir. 1986) ("[W]e recognize that protective orders should generally be modified to allow discovery in other actions.").

But in the 1980s and 90s, the Federal Rules of Civil Procedure required discovery be filed into the court record. That is no longer the case, as the Seventh Circuit explained in <u>Bond</u>. 585 F.3d at 1075-76. With the amendment of Rule 5 in the year 2000, discovery was no longer required to be filed, destroying whatever right of public access to discovery materials existed as a result of this longstanding rule. <u>Id.</u>; <u>see S.E.C. v. TheStreet.Com</u>, 273 F.3d 222, 233 n.11 (2d Cir. 2001). As a matter of constitutional law, "[a] litigant has no First Amendment right of access to

---

[1] The court notes that even when courts observed a public right of access to discovery materials, the public's right to access discovery was not absolute. In <u>Wilk</u>, Judge Wisdom recognized that "[a] collateral litigant should not be permitted to exploit another's discovery in the sense of instituting the collateral litigation simply as a device to obtain access to the sealed information." <u>Wilk</u>, 635 F.2d at 1300. The court explained that "[t]his is a corollary of the principle that federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding." <u>Id.</u>

information made available only for purposes of trying his suit." <u>Seattle Times</u>, 467 U.S. 20, 32 (1984). In <u>Seattle Times</u>, the Supreme Court held that the litigant's First Amendment rights were not violated when it was prohibited by a protective order from disseminating information obtained by the litigant in discovery where the protective order issued upon a showing of good cause, only limited disclosure of pretrial civil discovery, and did not restrict dissemination of information obtained from other sources. <u>Id.</u> at 37.

Thus, for those Policies that were never filed into the public record, there is no presumption of public access. The Policies were obtained by Dotson only by virtue of this litigation and his ability to disseminate them publicly may be restricted. As to the four Policies at issue that were filed into the public record by Dotson in support of his motion for summary judgment, while there is some authority indicating that such materials are not subject to the presumption of public access to judicial records,[2] more recent authority indicates that any document filed into the public record is subject to this rule.[3] Accordingly, the court will apply a presumption of public access to those Policies filed into the record.

*3. Waiver*

Before addressing each policy, the court first considers Dotson's categorical argument that LSP waived its right to seek a protective order limiting disclosure of the four Policies that he filed into the public record because LSP did not object at the time he filed them. Dotson concedes that

---

[2] The court in <u>In re Reporters</u> found no tradition of public access to "material placed before the court in connection with summary judgment motions" but not admitted into evidence at trial. 773 F.2d at 1338. Then Judge Scalia observed that "[i]f such a tradition existed, public files would presumably be filled with complaints stricken as scurrilous and with proffered evidence ruled inadmissible." <u>Id.</u>

[3] <u>Vantage</u>, 913 F.3d at 451 ("Once a document is filed on the public record it becomes a 'judicial record.'"); <u>Bond</u>, 585 F.3d at 1075 ("The rights of the public kick in when material produced during discovery is filed with the court."); <u>see</u> <u>Van Waeyenberghe</u>, 990 F.2d at 849 ("Once a settlement is filed in district court, it becomes a judicial record.").

LSP is not a party to this case, but points out that LSP was on an email from the district court's law clerk requesting the supplemental memorandum with the Policies forming the basis of Dotson's §1983 claims attached. The court notes that at the time Dotson filed the Policies into the record, the Policies were subject to the Protective Order. LSP was entitled to expect that Dotson would have requested the Policies be filed under seal before placing them in record so as to comply with his obligation under the Protective Order not to disclose Confidential Information to anyone other than "Qualified Persons" as defined in the Protective Order. Under these circumstances, the court cannot find that LSP has waived its right to request that the Policies be maintained confidentially.

### 4. *LSP Policies at Issue*

LSP argues that 11 Policies must be subject to a Protective Order preventing public disclosure because of public safety concerns. LSP has filed each of these Policies into the public record with the most sensitive portions redacted. (Rec. Doc. 218-2). Of the 45 pages that make up the 11 policies, only 31 pages contain any redactions. LSP appears to request that each policy be made subject to a protective order in its entirety or, in the alternative, that the redacted portions be protected from public disclosure. Because LSP has filed the unredacted portions of these Policies into the public record without the benefit of those records being sealed, the court finds LSP has waived any argument that the unredacted portions of the Policies at issue must be protected. The court now considers the redacted portions of each of the Policies at issue.

### a. *P.O. 223 (Firearms)*

LSP represents that P.O. 223 describes the types of weapons carried by officers and the manner in which those weapons are carried. It argues the policy should be protected from public disclosure because disclosure would implicate the safety of LSP officers.

Dotson argues that troopers would not be endangered by disclosure of P.O. 223 because which weapons they use and the manner in which they carry them are obvious from their public display. He says the redacted portions disclose the model (manufacturer) and caliber of the firearms, the color of the grip, the finish of the weapon, the length of the barrel, and other matters. He notes that on LSP's website, it discloses that the department issues the Glock .40 or 9mm pistols and the Remington 870 shotgun to each officer. He cites Wikipedia, which reports on the standard issue firearms.

The court first notes that P.O. 223 was not filed into the public record in an unredacted form and is not entitled to a presumption of public access.

The court finds that LSP has established good cause to protect P.O. 223 from public disclosure. Although some of the information may be visible to the public or available on Wikipedia or LSP's website, it appears that most of the redacted details regarding the weapons carried and the manner in which they are carried have not been publicly disclosed. Upon review of P.O. 223, the court finds LSP's concern that their disclosure could result in harm to LSP officers to be reasonable and sufficient to establish good cause to protect them from public disclosure. Additionally, the court finds that the prejudice to be suffered by Dotson is non-existent. As to the merits of his claims in this litigation, P.O. 223 had no bearing. Dotson does not appear to anticipate using any of the Policies in future litigation. Even his counsel has not made clear what benefit they would garner from being able to use the redacted portions of P.O. 223 in other litigation or in being able to disclose the full policy publicly. No particular public interest has been identified that would be served by the public disclosure of the details of LSP's firearms. Moreover, this court's ruling does not foreclose Dotson, his counsel, or any member of the public from seeking to obtain P.O. 223 through a public records request or through discovery in another lawsuit for use therein. This

court is guided, in part, by the concerns identified by Judge Wisdom that "federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding." Wilk, 635 F.2d at 1300. In Wilk, the court modified the protective order to allow a collateral litigant access to discovery on the same terms as the existing parties where the documents were not otherwise privileged and the collateral litigant was a party to nearly identical, parallel state court litigation where the documents would be relevant. Id. at 1296.   In Wilk, the court observed that "[p]articularly in litigation of this magnitude," it was "impressed with the wastefulness of requiring [the intervenor] to duplicate discovery already made." Id.   at 1299. No similar concerns are implicated here. Accordingly, the redacted portions of P.O. 223 shall be protected from public disclosure and may not be used by Dotson outside of this litigation.

> b. *P.O. 237 (Uniform, Appearance and Ballistic Vest)*

According to LSP, P.O. 237 describes who is required to wear protective vests and in what situations officers are required to wear them. Dotson responds that this information is obvious and would be known to any casual observer.

The court finds good cause to protect P.O. 237 from public disclosure. Observations of whether an officer is wearing a protective vest is not the same as knowing LSP's policy on when vests will be worn. The court finds LSP officers' safety could be placed in danger by public disclosure of the redacted portions of P.O. 237. The court notes that P.O. 237 was not filed in the public record and is not entitled to a presumption of public access. Accordingly, good cause has been established to protect the redacted portions of P.O. 237. Moreover, as with P.O. 223, the court finds no prejudice to be suffered by Dotson, his attorneys, or the public.

c. *P.O. 238 (Use of Force)*

According to LSP, P.O. 238 contains tactical information describing when officers may use specific weapons. LSP argues that this policy should be protected from disclosure because public disclosure would implicate officer safety.

Dotson submits that Paragraph 6(ii) and (iii) only identify the weapons that troopers may use and not when they may be used. He submits that paragraph 9(ii), (iii), (iv), and (xii) address when tasers can be deployed. He argues that in another case, LSP's corporate deponent testified that there is a more recent version of P.O. 238, which had been revised in August 2016 and June 2017. The same deponent testified that paragraph 9(vi) and (x) did not accurately represent LSP's policy.[4]  Dotson argues that in light of this testimony, there can be no real risk to officer safety if the policies are disclosed. Dotson adds that the New Orleans Police Department ("NOPD") posts its entire set of Policies on its publicly available website, including its Use of Force policy. He argues that there is no proof that NOPD has put its officers at risk by publishing this policy publicly. Dotson further argues that the presumption of public access is especially strong as to P.O. 238 because of the national conversation underway regarding the use of force by law enforcement officers. He notes that in New Orleans, journalists have been discussing the difference between NOPD policy and LSP practice on use of force.

P.O. 238 was attached by Dotson to his Supplemental Memorandum in Opposition to Summary Judgment, and is part of the public record. (Rec. Doc. 147-14). Thus, Dotson is correct that a presumption of public access applies to P.O. 238. Because this policy was before the district court in deciding the defendants' motion for summary judgment, the public's ability to analyze

---

[4] The court notes that paragraph 9(vi) and (x) have not been redacted by LSP. Thus, for the reasons discussed on page 4, supra, the possibility of maintaining these paragraphs subject to a protective order is not under consideration at this time.

and assess the district court's opinion and ruling may be limited without access to the policy. Dotson has identified a further prejudice to be suffered by the public if the material is exempt from public disclosure in light of the public debate regarding use of force by law enforcement officers. LSP is not unreasonable in expressing a concern that disclosure of information on when weapons are to be used could implicate the safety of LSP officers. Yet, as Dotson points out, other police departments like NOPD publicly post their use of force policy without harm to their officers. And as Dotson also notes, there is some indication that the policy has been revised since the version that Dotson now seeks to access without limitations on disclosure. Further, while the court rejected a finding of wholesale waiver as a result of LSP's failure to object to the public filing of P.O. 238 by Dotson, as Dotson points out, P.O. 238 has been available through the public record of this case since January 2018—19 months—with no effort by LSP to seal, remove, or redact and no noted adverse consequences.  On balance and in light of the presumption of public access to this record, the court finds that LSP has not established good cause and the redacted portions of P.O. 238 shall not be made subject to a protective order limiting disclosure.

> ### d.  P.O. 243 (License Plate Recognition Reader System)

According to LSP, P.O. 243 describes investigative equipment and tactics. LSP argues that public disclosure of this information would implicate the ability of LSP to conduct investigations.

Dotson counters that P.O. 243 does not describe investigative techniques. Instead he says it directs LSP staff on the ownership, dissemination, retention, enhancements, and other handling of data from the License Plate Registration system.

P.O. 243 has not been filed in the public record and is not entitled to a presumption of public access. The court disagrees with Dotson's characterization of the policy and finds instead that some tactical and investigative information is contained in the redacted portions, including the

13

sharing of License Plate Recognition/Reader System information and how long data is retained. Moreover, Dotson has only obtained access to this document by virtue of the discovery process in this case.  And furthermore, the policy appears to have no relevance to the claims or defenses herein asserted. Dotson has expressed no way that he or the public would be prejudiced if this policy was not allowed to be disclosed publicly. Upon review of P.O. 243, the court finds that LSP has established good cause to protect sections 2(ii), 2(iii), and 2(iv) of P.O. 243 from public disclosure. No countervailing reason for public disclosure has been presented by Dotson. The court finds, however, that sections 2(v) and 3 do not pertain to investigative tactics are not properly maintained subject to a protective order.

e.   *P.O. 402 (Communications)*

LSP submits that P.O. 402 describes the organization of communication between LSP officers internally and communications with outside agencies. LSP argues that public disclosure of this information would implicate the safety and security of LSP officers.

Dotson responds that the redacted material appears under the heading "Talk Group assignments." He argues that the redacted material does not provide any information that could enable non-LSP individuals to gain access to the channels. He submits that LSP has not provided any specific explanation of the risks involved.

P.O. 402 has not been filed in the public record and is not entitled to a presumption of public access. Upon the court's review of P.O. 402, it appears that each subsection provides a label and description of a talk group,[5] including what the channel is to be used for and, in some cases, who is to use it.  LSP represents that disclosure of the redacted communication categories would implicate the safety and security of LSP officers. The court finds this concern to be reasonable and

---

[5] A talk group is a virtual radio channel created for/by a trunked radio system. See Talkgroup, RadioReference, https://wiki.radioreference.com/index.php/Talkgroup (last visited Aug. 20, 2019 10:17 AM CDT).

sufficient to establish good cause to protect the redaction from public disclosure. Further, as with the other Policies, Dotson has only obtained access to this document by virtue of the discovery process in this case.  Yet, P.O. 402 appears to have no relevance to the claims or defenses herein asserted. Dotson has expressed no way that he or the public would be prejudiced if this policy was not allowed to be disclosed publicly. Under these circumstances, the court finds that LSP has established good cause to maintain the redacted section 2(xii) subject to a protective order prohibiting public disclosure and use of this section by Dotson outside of this litigation.

> f.   *P.O. 604 (Special Weapons and Tactics (SWAT))*

LSP submits that P.O. 604 contains specialized tactical information. LSP argues that public disclosure of the policy would implicate the safety of LSP officers. P.O. 604 was attached by Dotson to his Supplemental Memorandum in Opposition to Summary Judgment, and is part of the public record. (Rec. Doc. 147-7).

Dotson argues that P.O. 604 does not contain any information that is remotely "tactical." Further, he argues that even if there was some tactical information, that is not sufficient grounds to designate the policy confidential.

Because P.O. 604 was filed into the public record in opposition to a dispositive motion, there is a presumption of public access to the document. Nonetheless, the court takes note that Dotson has not explained the relevance of this policy to his claims in this lawsuit or any reason why he or the public would be prejudiced if the policies were protected from public disclosure. Upon review of the policy, the court finds that only sections 7, 8(ii), 9, and 12 could be said to implicate specialized tactical information. As to these subsections, the court finds that LSP has established good cause to protect them from public disclosure. The remaining redactions shall not be made subject to a protective order.

15

g.   *P.O. 1105 (Criminal Patrols)*

According to LSP, P.O. 1105 describes investigative techniques. LSP argues that public disclosure of the policy would implicate the safety of LSP officers.

Dotson counters that P.O. 1105 does not pertain to investigative techniques. For example, one redacted portion requires a criminal patrol unit with a certain number of interdiction troopers and canine troopers. Another describes the training required for criminal patrol unit members. A third describes one of the duties of the State Criminal Patrols Unit Coordinator (to disseminate information dealing with new methods of concealment). A fourth describes a duty of the Troop Criminal Patrols Unit Leader (to ensure each team member submits a summary of activities detailing arrests, seizures, field interview cards and traffic activities each month).  The fifth redaction is of most of the subsection titled "CPU Operations," which includes information about how vehicle searches should be conducted –with assistance, restoring vehicle to original condition afterwards, and procedures for reporting damage during a vehicle search; an instruction that photographing and videotaping evidence should be done in the original location and handling should be minimized; a requirement that investigative personnel be notified of arrests and seizures that require follow up; a requirement that investigators be provided with briefing on the circumstances and copies of forms, reports, etc.; a requirement that consent to search forms be filed with a troop and maintained for three years; an authorization of officers to assist with controlled deliveries; and a requirement that all unit members attend quarterly CPU meetings and exceptions thereto.

P.O. 1105 was attached by Dotson to his Supplemental Memorandum in Opposition to Summary Judgment, and is part of the public record. (Rec. Doc. 147-10). Thus, there is a presumption of public access to the document. However, Dotson has not explained how this

16

information was relevant to his claims. He has not identified a prejudice that he or the public would suffer if the redacted portions of the policy were protected from public disclosure. Nonetheless, the court finds that the redactions of P.O. 1105 do not appear to identify any confidential investigative techniques that, if disclosed, could harm LSP's ability to perform its duties. Under the circumstances, the court finds that P.O. 1105 is not entitled to protection from public disclosure.

      *h.  P.O. 1112 (Pursuit/Roadblock)*

According to LSP, P.O. 1112 describes investigative techniques and tactical information. LSP argues that public disclosure of the policy would implicate the safety of LSP officers.

Dotson counters that the NOPD manual has a similar policy on "Vehicle Pursuits" that has been disclosed publicly without any harm to the public. He argues that the presumption of public access to this document is not outweighed by the interests asserted by LSP. He submits that each of the redacted portions of P.O. 1112 either states risk factors that troopers should consider at various stages of a pursuit or roadblock, attempts to articulate statutory law in Louisiana or neighboring states, or concerns organizational or logistical matters that would pose no risk to public safety if disclosed.

P.O. 1112 was attached by Dotson to his Supplemental Memorandum in Opposition to Summary Judgment, and is part of the public record. (Rec. Doc. 147-12). Accordingly, the court observes a presumption in favor of public access. As to LSP's contention that public disclosure of the policy would implicate safety of LSP officers, the court takes note of Dotson's representation that the NOPD's comparable policy has been disclosed publicly by the NOPD. Upon review, while some tactical and investigatory information is revealed by the redacted portions of the policy, the court does not find that the security of LSP officers would be put in jeopardy or their ability to

conduct pursuits compromised by public disclosure of the policy. Accordingly, the court finds good cause has not been established and P.O. 1112 shall not be protected from public disclosure.

### i.   P.O. 1114 (Trailer Serial Numbers, VIN Replacement and Physical Inspections)

LSP reports that P.O. 1114 describes how vehicle identification numbers are assigned. LSP argues that public disclosure of the policy would implicate the integrity of trailer stamping operations and could lead to public fraud. This policy has not been filed into the public record in unredacted form.

Dotson responds that P.O. 1114 does not contain the kind of specificity that could result in the fraud LSP suggests. Dotson insists there is nothing confidential about this section.

Because P.O. 1114 has not been filed in the public record, it is not entitled to a presumption of public access. Dotson has only obtained access to this document by virtue of the discovery process in this case.  Yet, the policy appears to have no relevance to the claims or defenses herein asserted. Dotson has expressed no way that he or the public would be prejudiced if this policy was not allowed to be disclosed publicly. The court disagrees with Dotson's characterization of the policy. In the paragraph preceding the redacted section, the policy notes that some manufacturers may attempt to have their products assigned a serial number as a homemade vehicle  to avoid the payment of taxes. The redacted section distinguishes the serial numbers used for homemade versus factory made vehicles. Considering the possibility that this information could be used to perpetrate fraud and because there is no prejudice to be suffered if this policy is protected from public disclosure, the court finds that LSP has established good cause to protect the policy.

### j.   P.O. 1201 (Security/Protection Details)

LSP represents that P.O. 1201 describes the manner in which the Governor of Louisiana and other dignitaries are protected by LSP officers. It argues that public disclosure of this policy

would implicate the safety of LSP officers and the dignitaries implicated by the policy. This policy has not been filed into the public record in unredacted form.

Dotson responds that P.O. 1201 describes the logistics of LSP assignments and communications with other law enforcement agencies in very general terms. He insists that it does not include the type of tactical detail that would compromise public officials or dignitaries.

Because P.O. 1201 has not been filed in the public record, it is not entitled to a presumption of public access. As with the other Policies, Dotson has only obtained access to this document by virtue of the discovery process in this case. This policy appears to have no relevance to the claims or defenses herein asserted. Nonetheless, the court agrees in part with Dotson's characterization of P.O. 1201. Subsection 2 contains general information that does not appear to implicate the safety of LSP officers or dignitaries. Subsection 3, however, does contain some details that might implicate public safety. Accordingly, the court finds that good cause has been established to protect P.O. 1201 Subsection 3(i)-(vi) from public disclosure. Subsection 2 shall not be subject to a protective order.

### k. P.O. 1301 (Bombing Incidents, Threats & Transportation of Explosives)

LSP says that P.O. 1301 describes investigative techniques used in situations involving the use, or threat of use, of explosives. LSP argues that public disclosure of the policy would implicate the safety of LSP officers. This policy has not been filed into the public record.

Dotson responds that he does not object to LSP's proposed redaction of the "search procedures" paragraph. He says he recognizes that this paragraph contains detail that could implicate the safety of the public.

Accordingly, the court finds good cause to protect the redacted sections of P.O. 1301 from public disclosure.

<u>Conclusion</u>

For the foregoing reasons, LSP's Motion to Designate Under Protective Order (Rec. Doc. 218) is GRANTED in part and DENIED in part. The following subsections of the LSP Policies shall not be disclosed by the plaintiffs except to their attorneys or the court and shall not be used by the plaintiffs or their counsel outside of this litigation: all redactions of P.O. 223, all redactions of P.O. 237, Subsections 2(ii)-(iv) of P.O. 243, all redactions of P.O. 402, Subsection 7, 8(ii), 9, and 12 of P.O. 604, all redactions of P.O. 1114, Subsection 3(ii)-(vi) of P.O. 1201, and all redactions of P.O. 1301. The remaining redactions proposed by LSP shall not be protected from public disclosure.

It is FURTHER ORDERED that P.O. 604 appearing at Rec. Doc. 147-7 shall be placed UNDER SEAL and Rec. Doc. 147 shall be supplemented with a copy of Rec. Doc. 147-7 with Subsection 7, 8(ii), 9, and 12 redacted.

The court notes that nothing herein should be interpreted as a ruling under the Louisiana Public Records Law as to whether any member of the public is entitled to the policies hereby protected. This ruling shall only protect the Policies obtained by the plaintiffs in this litigation. If the plaintiffs or their counsel obtain the policies in some other legal manner, this order shall not restrict the use or disclosure of the Policies.

New Orleans, Louisiana, this 27th day of August, 2019.

Janis van Meerveld
United States Magistrate Judge

20